187 So. 718

## ALABAMA POWER CO. v. HENSON.

### I Div. 41.

Supreme Court of Alabama.

March 16, 1939.

Rehearing Denied April 13, 1939.

Martin, Turner & McWhorter and Henry Upson Sims, all of Birmingham, Howard Scott, of Chatom, and Nicholas E. Stallworth, of Mobile, for appellant.

Gordon, Leigh, Leigh & Gordon, of Mobile, for appellee.

564

**BOULDIN, Justice.**

■ The time within which an appeal may be taken to the Supreme Court from the judgment of the Circuit Court in condemnation proceedings is thirty days. Code 1923, § 7498.

This statute, not the general six months' statute, Code, § 6127, governs such appeal.

■ In case a motion for new trial is seasonably made, and jurisdiction of such motion acquired, the time for taking an appeal from the original judgment dates from the judgment overruling or granting the motion for new trial, or jurisdiction of such motion is otherwise terminated.

■ For the purposes of an appeal the finality of the judgment is suspended pending the motion for new trial. Shipp et al. v. Shelton, 193 Ala. 658, 69 So. 102; Childers v. Samoset Cotton Mills, 213 Ala. 292, 293, 104 So. 641; 2 Alabama Digest, Appeal and Error, p. 506, ⬥345.

■ When a motion for new trial is seasonably presented to the trial Judge who makes and signs an indorsement thereon showing the motion was filed and presented to him, and also indorses thereon an order setting a date during the term but beyond thirty days from the rendition of the judgment for the hearing of such motion, and thereupon counsel for the opposing party indorses an acknowledgment of service of notice of the motion and of the day so set, and the motion with these indorsements is lodged with the clerk, the motion for new trial is pending from that date; and the court has jurisdiction to hear the motion on the day so set.

■ The fact that the clerk had not indorsed on the motion the fact and date of filing in his office, and had entered no orders on the minutes of the court, but had merely attached the motion with orders thereon to the motion docket, furnished no ground for a motion challenging the jurisdiction of the court to proceed. There was evidence of record for the entry of all proper orders on the minutes.

■ The appeal was taken within thirty days from the judgment overruling the motion for new trial. The motion of appellee in this court to dismiss the appeal because not taken within the time allowed by law is, therefore, overruled.

The issue in the Circuit Court related to the just compensation to which the landowner was entitled for a right of way 100 feet in width for the erection and maintenance of transmission lines of the Alabama Power Company, with incidental easement to remove danger trees outside of the strip of 100 feet.

■ The landowner appealed from the assessment made in the Probate Court, namely, the sum of $1,070. The verdict of the jury, and judgment of the court thereon, fixed the just compensation at $2,850. The Power Company appeals. The trial of such issue in the Circuit Court is de novo.

The right of way is through a body of lands, enclosed by a fence, containing about 4,000 acres. The tract is valuable chiefly for standing and growing timber, for turpentining and for pasturage.

Evidence was directed to the market value of the right of way 100 feet in width, containing 25.51 acres, and to the value of the danger trees standing at the time, and which have been or may be cut for the protection of the transmission line. The injury to the market value of timber lands in this adjacent zone by reason of the continuing right to remove trees as they grow high enough to endanger the line was also an element of compensation or damages to be considered. These elements of damage are not questioned, but the testimony of witnesses varied as to values.

■ Dealing with assignments of error presenting certain rulings on evidence, we hold it was within the discretion of the trial court in course of the examination of plaintiff's witness Boykin to refuse plaintiff's request to have the witness make a calculation of the value of the property within the right of way. He had given his opinion of the value per acre. The number of acres were agreed. The jury

could make the calculation. There was no error in refusing to delay the trial for the witness to make it.

 This witness was one of the Commissioners who made the assessment of damages in the first instance. On cross-examination by defendant, landowner, this fact was drawn out. On further cross-examination, the defendant, over the objection and exception of plaintiff, drew out the amount of such assessment. Clearly such assessment was not evidence. The trial of that issue was de novo. If offered in evidence by the party seeking to sustain such assessment, to influence the jury by giving them the judgment of commissioners who had made a finding on the subject, its admission should clearly be refused. But here it was offered in cross-examination of a witness who had thus committed himself, and by the party challenging the adequacy of the assessment, and was followed up by further cross-examination tending to show an omission of certain items proper to be considered in estimating the damages, thus increasing his estimate of damages at the time of the trial to $1,423.65. Whatever influence the amount of the assessment could have on the jury was favorable to plaintiff.

The right of cross-examination, in our opinion, and the measure of discretion allowed in that respect, governs here, and there appears· no reversible error. The well known measure of damages in such cases is the difference in market value of the tract or body of lands before and after the taking.

 This may be proven by evidence of the value before taking and the value thereafter. The evidence may go into greater detail. It may be directed to the value of the strip over which the condemner for public use obtains such dominant use and control over the same that its full value on an acreage basis should be included. The qualified easement over the adjoining zone for removal of danger trees may be the subject of specific inquiry. The decreased value, if any, of the remaining lands in the tract may be gone into by any line of evidence tending to establish such fact and the extent of it. There is no stereotyped form of question to be addressed to a witness shown to have such knowledge of the value of such lands as to be able to form an intelligent opinion.

 In the absence of a showing that the witness understands the measure of damages, it is error to allow a general question: "How much was this tract of land damaged?" Such inquiry leaves to the witness the question of law, opens the door to· any fanciful measure of damages which may appeal to the witness. It calls for direct evidence on the matter to be determined by the jury after proper instructions upon the elements and measure of damages. · Bragan v. Birmingham Railway, Light & Power Co., 163 Ala. 93, 51 So. 30.

 But where the attention of the witness is directed by the question to the matter of decreased market value, it is not essential that he be asked to give his opinion of values before and after either on the whole tract or on a per acre basis. This method may be pursued on direct or cross-examination, leaving to the jury the calculation of the damages. But the witness may be asked how much the property, in his opinion, is diminished in· value, either upon the tract as a whole, or on an acreage basis. On giving his judgment as to the market value before the taking he may give his judgment as to the decrease in value, on a percentage basis. All these inquiries are directed to the same end. City of Huntsville v. Pulley, 187 Ala. 367, 65 So. 405.

Under these rules, the examination of defendant's witness, Jones, was begun by an improper question as to whether the tract of land was damaged, etc. The witness merely answered that it was, giving no figures. But the further examination in which the witness gave his judgment as to the extent of damage discloses he was testifying touching the decrease in market value of remaining lands by reason of cutting a right of way through it.

 Where the witness has disclosed sufficient knowledge of values to qualify as a witness, the court will not be held in error in declining to refuse his testimony because his estimate of the damages is manifestly exaggerated. The jury is the judge of the weight of the evidence.

 We do not say the court would commit reversible error in excluding evidence so out of reason that, as matter of common knowledge, it should be disregarded. Evidence touching property values is opinion evidence. This case, like many others, discloses a wide diversity of views among the witnesses touching the market value of the property, running from $10 to

$25 per acre. Like differences appear touching the diminution in market value of the remaining lands, running from nothing to one-half.

It is relevant to inquire into the several elements of value, such as the uses to which the property is adapted, although not presently so used, if it appears such prospective use affects the present market value of the property. Whatever an intelligent buyer would esteem as an element of value at the time of taking may be considered. Alabama Central Railroad Company v. Musgrove, 169 Ala. 424, 53 So. 1009; Ensign Yellow Pine Co. v. Hohenberg, 200 Ala. 149, 75 So. 897; Crawford v. City of Decatur, 226 Ala. 418, 419, 147 So. 615; O'Neill v. City of Birmingham et al., 221 Ala. 580, 584, 130 So. 87.

In course of the examination of witnesses it was disclosed that they considered the fire hazard to these timbered lands resulting from the presence of employees of the Power Company, in maintaining and inspecting the transmission line, or from strangers entering the premises by leaving gates unlocked.

The trial court by given charges H and K excluded all such contingencies as an element of damages by way of diminution of present market value.

We need not, therefore, consider under what conditions fire hazards may enter into the estimate of damages in condemnation proceedings.

By given charge B the court excluded any future values of trees for turpentine purposes.

Evidence was offered tending to show that this tract was adapted to the uses of a game preserve; that it was enclosed, that game animals ranged therein, that a hunting lodge had been erected, and hunting parties were at times invited, that at present no income was derived therefrom, but in the opinion of the witnesses, the tract has some commercial value as a game preserve; that, in the opinion of witnesses, such use affected favorably the present market value of the property, and the maintenance of the transmission line through the tract diminished its value as a game preserve.

Refused charges "F" and "J" sought to eliminate this alleged element of value.

It is not necessary that any exact figures upon the several elements of value be produced. The question is, does this use of the property affect in some degree its present market value, and does the taking and use of the right of way decrease such value, actual sale value at the time?

Great caution should be observed not to build up an imaginary or speculative value as a basis for awarding damages. But we are of opinion the court was not in error in receiving the evidence, or in refusing the charges eliminating the inquiry from the jury.

Counsel for plaintiff, with much care, prepared and requested a series of charges covering every phase of the case. Given charges, 3, 5, 9, 11, 14, are typical. They emphasize the true measure of damages, and carefully instruct the jury against the award of damages based on speculative values, or on fictitious, sentimental depreciation.

We are asked to disturb the verdict as excessive; to reverse the trial court on motion for new trial upon that ground.

Evidence for plaintiff put the damages, not figuring anything for diminution of value of remaining lands, at $1,-423.65. Evidence for defendant placed the market value per acre at a higher figure. The verdict of $2,850 cannot be justified except on the assumption of some diminished value of the remaining lands. But it clearly disclosed that no credence was given to estimates of decreased value to the extent of 1/3 or 1/2, as deposed by certain witnesses for defendant. The value of the tract was variously estimated at $40,000 to $100,000. We cannot say, as matter of law, there was no diminution in the market value of the remaining lands, or that the verdict is so clearly and palpably excessive that this court should disturb it despite the presumption indulged in favor of the jury's finding, and the ruling of the trial court sustaining same.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.