32 So.2d 795

**ALABAMA POWER CO. v. THOMPSON.**

**7 Div. 909.**

Supreme Court of Alabama.

Oct. 16, 1947.

Rehearing Denied Dec. 18, 1947.

Knox, Liles, Jones & Woolf, and Walter J. Merrill, all of Anniston, and Martin, Turner & McWhorter and Alvin W. Vogtle, Jr., all of Birmingham, for appellant.

Merrill & Merrill, of Heflin, for appellee.

LAWSON, Justice.

This is a suit by appellee, J. L. Thompson, against appellant, the Alabama Power Company, to recover damages for certain trespasses alleged to have been committed by the defendant company upon lands of Thompson.

It appears from the pleading and evidence in this cause that the Alabama Power Company is a power corporation organized and existing under the laws of this state. As such corporation it has the right and power to acquire lands for public use in the conduct of its quasi public business. It may enter legally upon lands which it contemplates acquiring for public use, to examine and make surveys thereon for routes and lines, but is subject to liability for all damage done as a result of such entry. § 82, Title 10, Code of 1940; Birmingham-Trussville Iron Co. v. Allied Engineers, Inc., 225 Ala. 522, 144 So. 1.

In May, 1944, Thompson purchased from Mr. and Mrs. C. M. Elliott approximately ten acres of land situated in the southwest quarter of the northeast quarter and in the northwest quarter of the southeast quarter of Section 10, Township 16 South, Range 10 East, all in Cleburne County.

The Alabama Power Company in the latter part of 1945 and early part of 1946 was engaged in making plans and preparations for the erection of a rural power line in the vicinity of the above-described land. Finding it necessary or expedient to construct such electric distribution line over said land, the power company made inquiry as to the owner thereof. Concluding that the land was still owned by Mr. and Mrs. C. M. Elliott, the Power Company, on January 9, 1946, secured from the Elliotts what is termed a "pole line permit," which in pertinent part is as follows:

"* * * do hereby grant to said Alabama Power Company, its successors and assigns, the right to construct, operate and maintain its lines of poles and towers and appliances necessary in connection therewith, as located by the final location survey heretofore made by said Company, for the transmission of electric power with the right to string thereon from time to time electric power and telephone wires and the right to permit other corporations and persons to attach wires to said poles and towers upon, over and across the following described lands situated in Cleburne County, Alabama [Here follows the description of the land to which the permit is applicable which description includes part of the land conveyed by the Elliotts to Thompson.] Together with all the rights and privileges necessary or convenient for the full enjoyment or use thereof, including the right of ingress and egress to and from said lines; and also the right to cut and keep

clear all trees, and to keep clear all obstructions, that may injure or endanger said lines."

Acting under the instrument just above quoted from, and without the consent of Thompson, the Alabama Power Company, on February 26, 1946, entered on the lands of plaintiff and cut down 150 or more trees. On the following day, a "pole" was "set" on the property and a "guy wire" was installed thereon on April 5, 1946. The time of the stringing of the line does not appear.

Thompson became aware that his land had been entered and his trees cut within four or five days. Having been unable to settle the matter with the Alabama Power Company, Thompson filed this suit on June 28, 1946.

There were two counts in the complaint. Count 1 claimed damages for trespass upon plaintiff's land, for cutting trees thereon and for destroying the building site. Count 2 sought recovery of the statutory penalty for wilfully and knowingly cutting the trees.

Defendant's demurrer was filed on July 19, 1946. On July 22, 1946, the cause was continued until October 14, 1946, at the request of both parties.

On October 14, 1946, the court overruled defendant's demurrer. Defendant company then on the same day filed five pleas. The first two were of the general issue, the third and fourth were in bar to the further maintenance of the suit, and the fifth set up the defense that the defendant entered upon the land and cut the trees thereon under the mistaken belief that it was the property of C. M. Elliott and wife. Thompson, the plaintiff, then demurred to the pleas filed by defendant company. Upon motion of the parties the hearing on the demurrers to the pleas was continued to October 29, 1946, at which time the trial court overruled the demurrers of plaintiff as to the pleas of the general issue and as to plea 5 (mistake) in answer to the second count of the complaint wherein the cutting of the trees was charged to have been wilfully and knowingly done. Demurrer was sustained as to pleas three and four, which were in effect in bar to

the further maintenance of the suit and to plea five (mistake) in so far as it purported to be a defense to the first count (trespass) of the complaint.

At the conclusion of the testimony the trial court at the request of the defendant gave the general affirmative charge in favor of defendant as to Count 2 of the complaint.

However, upon request of plaintiff the trial court gave the general affirmative charge in his favor as to the first count.

The jury returned a verdict for plaintiff in the amount of $200. There was judgment in accordance with the verdict. Motion for new trial having been overruled, the Alabama Power Company has appealed to this court.

■ There are ten assignments of error. Assignments 2 and 10 are not argued and consequently must be considered as waived. Supreme Court Rule 10, Code 1940, Title 7, Appendix; McDavid v. United Mercantile Agencies, Inc., 248 Ala. 297, 27 So.2d 499.

Assignments of error 1, 3, and 4 are argued together in brief, and are to the effect that the trial court erred in sustaining demurrer of plaintiff to defendant's pleas 3 and 4, which as heretofore shown were in bar to the further maintenance of the suit. We will consider that question first.

Plea No. 3 alleges in substance that the defendant is a corporation organized under the laws of the State of Alabama and has the right under its charter to condemn land on which to construct electric power lines; that on July 23, 1946, about three weeks after plaintiff filed the trespass action, the defendant company instituted condemnation proceedings in the probate court of Cleburne County, Alabama, to condemn a right of way over the same lands which are involved in the trespass action, to which proceedings Thompson was a party defendant; that all of the matters which are at issue in this suit were litigated and adjudicated in said condemnation proceeding, a complete certified copy of such proceeding being attached to and made a part of the plea; that there was awarded to plaintiff the sum of $75 as compensation for damages, and that the defendant paid

the sum so awarded together with the costs of the condemnation proceedings into the probate court of Cleburne County on August 17, 1946, whereupon the probate court entered an order of condemnation; that thereafter plaintiff, Thompson, appealed from said order of condemnation to the circuit court of Cleburne County; that upon the taking of the appeal by Thompson the Power Company filed in said probate court a bond in double the amount of the damages awarded to Thompson.

Defendant's Plea No. 4 contains substantially the same averments as Plea 3 with the additional allegations that after the lines were built and before the condemnation proceedings were begun the Power Company attempted on numerous occasions, in good faith but without success, to effect a settlement with Thompson for the injuries caused him.

The grounds of demurrer in effect raised these points, namely, (1) that the pleas were prolix and contained irrelevant matter in that the record of the condemnation proceedings, which was made a part of the pleas, showed the award which was made by the commissioners in the probate court; (2) that the averments of the said pleas did not constitute a defense to the suit.

The judgment of the trial court sustaining the demurrer was general, not stating the particular grounds which were sustained.

█ Pleas 3 and 4 were not prolix nor were they subject to demurrer because the records of the condemnation proceedings in the probate court were incorporated therein. On appeal to the circuit court for ascertainment of compensation to which a property owner is entitled from judgment rendered in condemnation proceedings in the probate court, neither the report of the commissioners nor the judgment rendered can be introduced legally as evidence of just compensation. Alabama Power Co. v. Henson, 237 Ala. 561, 187 So. 718; Housing Authority of Phenix City v. Stillwell, 241 Ala. 420, 3 So.2d 55. But such rule has no application here where defendant in support of his plea of former adjudication makes a part of such plea the record of proceedings in. the former suit. In some jurisdictions it is held that it is necessary in support of such a plea to incorporate in, or to annex to, the plea the whole record of the former suit. 50 C.J.S., Judgments, § 832, P. 401. Moreover, prolixity is reached by motion to strike rather than by demurrer. Atlantic Coast Line R. Co. v. Carroll, 208 Ala. 361, 94 So. 820; Title 7, § 213, Code of 1940. Unnecessary and improper matter in a plea is subject to being stricken on motion, but such matter in a plea does not render it demurrable. Barnett v. Freeman, 197 Ala. 142, 72 So. 395.

The question raised by those grounds of demurrer which take the point that the averments of Pleas 3 and 4 are not sufficient to operate as a bar to the further maintenance of the suit is not without difficulty.

█ The general principle is well established that an existing final judgment, decree, or other final adjudication rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions in the same or any other tribunal of concurrent jurisdiction, on the points and matters in issue and adjudicated in the first suit. Elmore Quillian & Co. v. Henderson-Mizell Mercantile Co., 179 Ala. 548, 60 So. 820, 43 L.R.A.,N.S., 950; Hall & Farley v. Alabama Terminal & Improvement Co., 173 Ala. 398, 56 So. 235; City of Huntsville v. Goodenrath, 13 Ala.App. 579, 68 So. 676, certiorari denied City of Huntsville v. Gudenrath, 194 Ala. 568, 69 So. 629; Schillinger v. Leary, 201 Ala. 256, 77 So. 846.

Plaintiff does not contend that the probate court did not have jurisdiction to enter the order of condemnation and to award him compensation for the damages for which he seeks to recover in the trespass action nor does he claim that the averments of the said pleas do not show that there was an adjudication on the merits by the probate court of all the matters and issues which he seeks to have adjudicated in the trespass suit.

It is plaintiff's insistence, as we understand it, that the said pleas were not good

as a bar to the further maintenance of his trespass suit for two reasons: first, because they show that his trespass action was filed before the condemnation proceedings were instituted; second, because the said pleas affirmatively show that the judgment or order therein set up as a bar was not final.

■ There is no merit in the first contention. When two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment although it may be in the second suit, that renders the matter res judicata in the other suit. 2 Freeman on Judgments, § 719, p. 1519; Davis v. Bedsole, 69 Ala. 362.

■ When the parties acquiesce in the award made by the commissioners, pay the amount of such award in accordance with the statute, § 16, Title 19, Code of 1940, take no appeal within thirty days after the making of the order of condemnation, it seems clear that such order of condemnation made in pursuance of the award assessed by the commissioners has the attributes of a final and absolute judgment, conclusive upon the parties, and which may be pleaded as res judicata. § 17, Title 19, Code of 1940; Alabama Midland Railway Co. v. Newton, 94 Ala. 443, 10 So. 89.

But here the landowner within the thirty-day period filed an appeal to the circuit court and made demand for jury trial. Upon the taking of the appeal the Power Company paid into court in money the amount of the damages assessed and gave bond in double the amount of such damages. § 18, Title 19, Code of 1940. At the time demurrer was sustained to the Power Company's pleas in bar to the further maintenance of the trespass suit, the appeal was still pending and undetermined in the circuit court.

The question is presented, therefore, as to the effect of the pendency of the appeal. Did it operate to disturb the finality of the order of condemnation of the probate court so as to prevent such order from operating as res judicata or as estoppel?

■ In this jurisdiction a judgment will operate as res judicata or as estoppel notwithstanding an appeal when the appellate court action is based on a review of the record made below. Corinth Bank & Trust Co. v. Lawler, 218 Ala. 83, 117 So. 620; Collier v. Alexander, 142 Ala. 422, 38 So. 244; Viberg v. State, 138 Ala. 100, 35 So. 53, 100 Am.St.Rep. 22.

■ But the rule of the cases just above cited is not controlling here because appeals of the kind here involved are tried de novo in the appellate court (circuit court). § 17, Title 19, Code 1940; Housing Authority of Phenix City v. Stillwell, supra. On such appeal the right of the condemnor to condemn is to be determined by the court without the aid of the jury, while the amount of damages to be assessed is a question exclusively for the jury, the landowner having requested jury trial. § 235, Constitution of 1901; Mobile & Birmingham R. Co. v. Louisville & N. R. Co., 192 Ala. 136, 68 So. 905; City of Birmingham v. Brown, 241 Ala. 203, 2 So. 2d 305; Moore v. City of Mobile, 248 Ala. 436, 28 So.2d 203. The circuit court on such appeals makes its own order of condemnation in accordance with the provisions of § 21, Title 19, Code of 1940.

■ The effect of an appeal triable de novo on the order of condemnation appealed from is said to be as follows in Lewis on Eminent Domain, 3d Ed., § 793, p. 1409: "The effect of an appeal where there is a trial de novo in the appellate court is to vacate the decision appealed from until the appeal is disposed of. But if the appeal is dismissed, the decision appealed from is restored to full force and effect." See City of Kansas v. Kansas Pacific Ry. Co., 18 Kan. 331; Pool et al. v. Breese, 114 Ill. 594, 3 N.E. 714; Morse v. Wheeler, 69 N.H. 292, 45 A. 561; Minneapolis & Northwestern R. Co. v. E. P. Woodworth, 32 Minn. 452, 21 N.W. 476. The same rule is stated generally as to all types of appeals triable de novo in the appellate court in 2 Freeman on Judgments, § 722, p. 1528. See Moss v. Taylor, 73 Utah 277, 273 P.

515; Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F.2d 476.

But what is the effect of a compliance with the provisions of § 235 of the Constitution and § 18, Title 19, Code of 1940, upon the rule above stated? § 235, many of its provisions new to the Constitution of 1901, provides as follows:

"Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. The legislature is hereby prohibited from denying the right of appeal from any *preliminary assessment of damages* against any such corporations or individuals made by viewers or otherwise, *but such appeal shall not deprive those who have obtained the judgment of condemnation from a right of entry, provided the amount of damages assessed shall have been paid into court in money, and a bond shall have been given in not less than double the amount of the damages assessed, with good and sufficient sureties, to pay such damages as the property owner may sustain; and the amount of damages in all cases of appeals shall on demand of either party, be determined by a jury according to law."* (Emphasis supplied)

The provisions of § 18, Title 19, supra, were new to the Code of 1907 and such provisions are in accord with the terms of § 235 of the Constitution, supra. § 18 reads: "No appeal shall suspend the judgment, or deprive the applicant of the right of entry, provided the amount of the damages assessed for the parties who appeal or against whom an appeal is taken, shall have been paid into court in money, and a bond shall have been given in double the amount of such damage, with good and sufficient sureties, to pay such damages as the property owners may sustain."

The Power Company insists that when the bond has been executed in accordance with the terms of § 18, Title 19, supra, that pending the appeal, the order of condemnation entered by the probate court not only operates to permit entry by the condemnor until the matter is disposed of on appeal, but operates to accord to such order such qualities of finality as to be conclusive of the rights of the parties or their privies in other actions involving the matters and issues adjudicated in the condemnation proceedings in the probate court.

Section 235 of the Constitution and § 18, Title 19, Code of 1940, enacted thereunder, operate to permit the condemnor to have the right of entry and to that extent the order of condemnation of the probate court is not suspended when there is an appeal by the landowner and proper bond executed by the condemnor. But the very language of § 235 of the Constitution shows that the assessment of damages made in the probate court is a preliminary assessment and unless the parties fail to avail themselves of the right of appeal within the statutory period such order does not finally settle either the matter of the right of condemnation or the extent of damages to which the landowner is entitled.

The legislature cannot deprive the parties of the right of appeal from "any preliminary assessment of damages", and, "the amount of damages in all cases of appeals shall on demand of either party, be determined by a jury according to law." Constitution, § 235. As before pointed out, the appeal in the circuit court is de novo, the right of condemnation determined by the court, and the amount of damages fixed by the jury. In the trial in the circuit court neither the report of the commissioners nor the order of condemnation is admissible in evidence. It is an entirely separate and distinct procedure from that which took place in the probate court.

The defendant Power Company insists that the case of Birmingham-Trussville Iron Co. v. Allied Engineers, Inc., 225 Ala. 522, 144 So. 1, is direct authority for its position that the order of condemnation entered by the probate court is a complete bar to the further maintenance of the trespass action. The holding in that case may be summarized as follows: An original owner of land, which has been acquired by due condemnation proceedings instituted by a public utility corporation

invested with the rights of eminent domain, *and who has been paid money by the condemnor for the land and for damages for trees cut thereon in an amount fixed by a jury on appeal from the probate court proceedings,* cannot thereafter prosecute to judgment a trespass suit against the condemnor to recover damages for the cutting of identical trees for which the original landowner was compensated in accordance with the jury verdict in the circuit court.

But the factual difference in that case and this is very material. In that case prior to the time the trespass action came on for trial, the appeal in the condemnation case had been determined in the circuit court, the land condemned, and award made by a jury to the landowner as compensation for the same injury for which recovery was sought in the trespass action and the amount of such award paid to and accepted by the Iron Company. Here, as before shown, at the time the trial court sustained plaintiff's demurrer to defendant's Pleas 3 and 4, the appeal from the proceedings in the probate court had not been tried. Consequently, no award had been made by a jury in the circuit court and no money accepted by the plaintiff.

■ We hold that while the appeal is pending in the circuit court from an order of condemnation made in the probate court, such order is not such a final adjudication as is conclusive of the rights of the parties or their privies in other actions wherein are involved the issues passed on in the condemnation proceedings in the probate court. It may not be pleaded as res judicata or as estoppel. It follows, therefore, that the trial court correctly sustained plaintiff's demurrer to defendant's Pleas 3 and 4 inasmuch as said pleas affirmatively show that there was an appeal pending and undetermined from the order of condemnation entered by the probate court, which order defendant sought to set up as a bar to the further maintenance of the trespass action.

■ The trial court over general objections of defendant permitted witnesses for plaintiff to state that plaintiff's property was damaged by defendant's acts and to express their opinion as to the extent of the damage. Such rulings of the court are presented for review under assignments of error 5, 6, 7, and 8. Under our decisions witnesses should not, in general, be allowed to state that property was or is damaged, but should state its condition and leave the conclusion to the jury. Sloss-Sheffield Stell & Iron Co. v. Mitchell, 181 Ala. 576, 61 So. 934; Gosdin v. Williams, 151 Ala. 592, 595, 44 So. 611; Central of Georgia R. Co. v. Keyton, 148 Ala. 675, 41 So. 918; Hames v. Brownlee, 63 Ala. 277. Nor can a witness give his opinion as to the amount of damage. The province of the jury is to ascertain the amount of damage, and the witness must testify to facts upon which the jury must base its findings. Atlanta & Birmingham Air Line Ry. Co. v. Brown, 158 Ala. 607, 48 So. 73; London & Scottish Assur. Corporation of London, England, v. Smith, 229 Ala. 556, 158 So. 892, and cases there cited. But the objections interposed by defendant were general. The evidence was not manifestly illegal and irrelevant, so the court will not be put in error for overruling such general objections. Birmingham Water Works Co. v. Ferguson, 164 Ala. 494, 51 So. 150; Burnett & Bean v. Miller, 205 Ala. 606, 88 So. 871; Roth Shoe Mfg. Co. v. Kartus, 19 Ala.App. 612, 99 So. 772; Rule 33, Circuit and Inferior Court Practice, Code of 1940, Title 7, Appendix.

Assignment of error No. 9 is predicated upon the refusal of the trial court to give, at the request of the defendant, the following written charge:

"11. I charge you that the plaintiff in this case is not entitled to recover damages for the destruction of a building site on the property involved in this action."

■ In action for trespass to real property, the measure of damages is the difference in the value of the land before and after the trespass. Gosdin v. Williams, supra; Craft v. Craft et al., 209 Ala. 226, 95 So. 901. The adaptability of the property taken and injured, for a special purpose affecting its value, is an element for the consideration of the jury in assessing the damages. Alabama Central R. Co. v. Musgrove, 169 Ala. 424, 53 So. 1009;

Alabama Power Co. v. Henson, 237 Ala. 561, 187 So. 718; Pickens County v. Jordon, 239 Ala. 589, 196 So. 121. Here it appears that the plaintiff purchased this property for the purpose of building a house thereon. The property was located very near the town limits of the Town of Heflin. The evidence shows that there was only one building site on the land and that the line of the power company ran through it.

Refused Charge No. 11 above set out sought to eliminate this alleged element of value from the jury's consideration and was, therefore, properly refused. The evidence in this case as it related to the adaptability of the land for residential purposes was not imaginary or speculative, hence the case of Crawford v. City of Decatur, 226 Ala. 418, 147 So. 615, is not here controlling in this regard.

We think the foregoing discussion is sufficient to show our opinion that the assignments of error do not show reversible error.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.