417 So.2d 1198 (1982)
UNITED GAS PIPE LINE COMPANY
v.
Charles S. BECNEL, et al.
Nos. 5-16 to 5-21.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
Rehearing Denied August 19, 1982.
*1199 Hargrove, Guyton, Ramey & Barlow, Thomas J. Wyatt and A. L. Wedgeworth, III, Shreveport and Talbot, Sotile, Carmouche, Waguespack & Marchand, Vincent J. Sotile, Donaldsonville, for plaintiff-appellant.
Martin, Himel, Peytavin & Nobile, Anthony J. Nobile, Lutcher, Michael Heltz, Gramercy, Tureau & Mire, Ralph Tureau, Gonzales, Bernard, Cassisa, Babst & Saporito, Frank Davis, Metairie, Becnel & Gravois, Larry C. Becnel, Vacherie, for defendants-appellees.
Before SAMUEL, BOUTALL and CHEHARDY, JJ.
*1200 CHEHARDY, Judge.
Plaintiff, United Gas Pipe Line Company (United), appeals several district court decisions in favor of the plaintiff and against the defendants in six consolidated expropriation suits. The judgments granted United a pipeline right of way and servitude through, under, over and across the defendants' properties, and the plaintiff was also granted the right to use and occupy a temporary working area during the construction of the pipeline, consisting of an additional two strips of land on each subject tract.
In the suit against defendants Amelie Gerstner and Amelie Ellis Prescott Woods, consideration for all damages was fixed at $12,920, and reasonable attorney fees were fixed at $3,130. The plaintiff was ordered to pay the defendants' expert witness John LeJeune $500.
In the suit against defendants Doris Saunier Matherne, Claude Joseph Saunier, Lois Saunier Rouchon, Wilbur Saunier, and Adrian Saunier Estave, consideration for all damages was fixed at $21,603 and reasonable attorney fees were set at $5,200.75. Plaintiff was also ordered to pay LeJeune $500 in this suit.
In the suit against defendants Luly A. Huguet Mastio, Marine H. Peters, Hester H. Berry, Marie Huguet Bourgeois and Sam Huguet, consideration for all damages was fixed at $16,213. Reasonable attorney fees were fixed at $3,953.25, and the plaintiff was ordered to pay LeJeune $500.
In the case against defendants Day Huguet, Daisy Huguet Richardson, Ray Huguet, Gertrude Huguet Folse, Carol Huguet Harper, Ruby Huguet Vicknair, Lorraine Huguet Ott, and Patricia Huguet Johnson, consideration for all damages was set at $17,235 and reasonable attorney fees were fixed at $4,208.75. The plaintiff was also ordered to pay LeJeune $500.
In the suit against defendants Timothy A. Becnel Inter Vivos Trust, Thomas J. Kliebert as Trustee for said Timothy A. Becnel Inter Vivos Trust, Kliebert Educational Trust and Charles S. Becnel, as Trustee for said Kliebert Educational Trust, consideration and all damages were fixed at $5,825, reasonable attorney fees were set at $1,411.25, and the plaintiff was also ordered to pay LeJeune $500 in that case.
In a later judgment in a case against Charles S. Becnel, et al., based on the stipulations of all parties it was ordered that the consideration for the right of way previously adjudged unto plaintiff by the earlier judgment was thereby fixed at $12,025. Plaintiff was ordered to pay reasonable attorney fees of 15% or $1,803.75, but was not held liable for expert witness fees incurred by the defendants in this matter.
The plaintiff in all of these consolidated cases was ordered to pay all costs of the proceedings. None of the defendants have appealed the subject judgments, but ask that they be affirmed.
The issues presented to this court on appeal are whether the trial court was in manifest error in evaluating the expert testimony; whether the highest and best use of the subject tracts, based on the potential for assemblage, should have been considered industrial; whether severance damages were due to the subject properties and whether defendants are entitled to attorney fees.
Oren Russell, a real estate broker and appraiser, testified the subject tracts in this case are in an unimproved area, either wooded or lightly wooded. He said the market approach was the basis of establishing their valuation. He described the subject properties as having a highest and best use of rural residential and noted they did not have enough width to accommodate even small industry. All of the subject parcels he evaluated at an amount less than $2,000 an acre. Russell did admit that although there was heavy industry in the area of these parcels, all of the comparables used in his evaluation were residential.
Julius Bahlinger, another real estate appraiser, said that the subject tracts would have a highest and best use as residential and small commercial, and he restricted his attention to sales of comparables with like uses. He came to the conclusion that the *1201 value per acre for all five subject tracts was $2,000. Bahlinger said that although the records showed the properties should be valued at between $1,300 to $1,600 per acre, he increased it somewhat in looking to the foreseeable future.
When asked about the possibility of combining these tracts to other tracts in the area to produce larger tracts for industrial use, this expert said it was his experience this was a very difficult thing to do because there are always "hold outs" and homeowners who do not want to leave, resulting in the assemblage turning into a very costly operation.
Russell also testified that damages to these tracts by the pipeline would be relatively small. He said he did not think the properties could be used in the foreseeable future for industrial use, and maintained this position in spite of his admission in testimony that he could foresee an increase in growth of industry and commerce in the area over the next five years. However, he reiterated the difficulties of assemblage and felt that to assign a higher value on the property based on that possibility would be highly speculative.
John LeJeune, another real estate appraiser and developer, stated that he has testified as an expert in 436 trials involving property evaluations and has worked a great deal in St. James, St. John and Ascension Parishes during the 12 years prior to the trial in this case. LeJeune said he visited the subject properties, and he explained the importance of their location in the Cantrell Reach (a deep water area of the Mississippi River) and their proximity to what he called the "Cap Line," the "P. O. E. Pipeline" and the Louisiana Offshore Oil Pipeline. He said that this area had the most intense industrial development activity in St. James Parish at the present time. It was his opinion, therefore, that the highest and best use of the properties was for assemblage with other tracts into a 200- or 300-acre site, which he felt would be a tract of land of great value for use as an industrial site.
LeJeune defined highest and best use as the use most likely to produce the greatest net return to the property over a given period of time, and explained other assemblages which have taken place in the area, which he considered in making his appraisals. His opinion was that a prudent man would pay $5,000 per acre for each of the five subject tracts of land and he could then make a profit either by leasing or selling the land after assemblage with other parcels.
LeJeune stated the subject pipeline is going to sever all five tracts of land and a permanent installation could not be built over any part of the servitude. Because of the limits the servitude would impose on the property, he found the severance damages would reduce the property value from $5,000 an acre to $4,000. He said it would change the highest and best use of the property from potential high density industrial to a less intense use such as rural residential. LeJeune also said he had discounted the value assigned to each tract by approximately 50% (before arriving at the $5,000-an-acre figure) to compensate for the difficulties of assemblage.
On each of the subject parcels, LeJeune arrived at his estimate of total damages by figuring the acres taken within the permanent servitude, and figuring the acres taken within the temporary construction servitude (assuming that a man was entitled to a 10% return on the value of that property for one year). In arriving at both of these figures he assumed the subject properties were worth $5,000 an acre. He then added these figures to severance damages of $1,000 per acre in each case to estimate total just compensation for each tract.
It was these figures given by LeJeune that the trial court judge followed in making his individual total awards in each of these present cases.
This court is bound by the rule that in expropriation proceedings the trial court's factual findings as to severance damages and the evaluation of, and the weight given to, the testimony of expert witnesses will not be disturbed on review *1202 absent a showing of manifest error. State, Through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979).
It has also been established that in cases of this type a correct measure of compensation is the market value of the thing taken, i.e., the price agreed upon by a willing and informed buyer and seller in the condition in which the property stood at the time of the expropriation. The market value of the condemned property means the worth of the land considered in regard to its best and highest use, that is, the manner in which the property can be reasonably used in the not too distant future. State Dept. of Highways v. Dyess, 350 So.2d 1304 (La. App. 3d Cir. 1977).
Although the question of assemblage with other tracts of land (in determining the market value or highest and best use of a parcel) has not been specifically addressed in Louisiana, the issue was addressed in State v. Long, 344 So.2d 754 (Ala.1977), wherein the court stated at 759-760:
"Appellant's other contention is that part of Morgan's deposition is inadmissible. Morgan concluded `that the Long property and the property known as the Ladd property, which is adjacent thereto, when together, form a prime industrial site.' The State would have us conclude that Morgan's testimony is `tantamount to testimony about a land use which is purely imaginary and based on pure speculation and conjecture.' We note that the State's argument goes to the question of whether the highest and best use of a tract of land may be based on the use the tract in association with adjacent land held by other owners, not whether the tract is capable of being an industrial site assuming the adjacent tract might be included.
"The fact that the adjacent land is held in ownership by another party who may or may not want to sell is not determinative.
`The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value ... In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L.Ed. 934. The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of valuea thing to be condemned in business transactions as well as in judicial ascertainment of truth.' Olson v. United States, 292 U.S. 246, 256-257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934).
See United States v. Fuller, 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973).
`"... Whatever an intelligent buyer would esteem as an element of value at the time of taking may be considered." `Blount County v. McPherson, 268 Ala. 133, 137, 105 So.2d 117, 121 (1958), quoting from Alabama Power Co. v. Henson, 237 Ala. 561, 187 So. 718, 721 (1939).
"The State cites no cases in support of its contention, nor does it give any reason to believe that a prospective buyer would not consider the value of this property in respect to adjacent properties. The mere *1203 fact that the adjacent property is held in another ownership does not make their combined use speculative and imaginative without other supporting factors. See Olson, supra. The bargaining power of the individual seller would certainly be greater if he owned his tract and the adjacent tract, but that does not make testimony possibility of the use of both tracts in combination inadmissible."
Severance damages have been deferred by the Louisiana courts as damage to the remaining property because of its separation from the expropriated property and these damages are calculated as the difference between the market value of the remaining property immediately before and the market value immediately after the taking. State Through Dept. of Highways v. Ruckstuhl, 348 So.2d 701 (La.App. 1st Cir. 1977).
Although the burden of proving severance damages rests on the landowner, who must prove such damages with legal certainty by a preponderance of the evidence, there is no fixed or artificial formula by which such damages must be proved. In fact, the informed and reasoned opinion of an expert, corroborated by the facts in the record, may be sufficient proof of a severance damage loss, especially where it is accepted by the trier of fact. State, Through Dept. of Highways v. Wilson, supra.
In the present case the district court judge chose to adopt in toto the testimony of the defendants' expert witness. To a great extent the testimony of LeJeune rested upon the possibility of combining the subject tracts in this case with other tracts and thereby increasing their market value due to the fact that their highest and best use would then be industrial rather than rural residential. He substantiated his opinion with examples of comparable sales in the area which were made for the purpose of assemblage, some of which were for much greater amounts than the $5,000-per-acre evaluation he was placing on the tracts in the present case. We cannot conclude, therefore, that his consideration of assemblage was too speculative in nature to be considered by the trial court.
Nor can we find any reason in the law of Louisiana for excluding assemblage as a valid means of arriving at damages in expropriation cases in appropriate instances. Not to do so in some cases, such as the present one, would not be fair to the defendants who are to be put in as good a position pecuniarily as they would have been had their properties not been taken. State, Through Dept. of Highways v. Constant, 359 So.2d 666 (La.App. 1st Cir. 1978).[1] It was also the testimony of LeJeune that the properties in question would suffer at least $1,000 per acre of severance damages because industries would tend to avoid attempting to assemble properties on which such a servitude as the one in the present case exists. Although, as noted above, the landowner must show the existence of severance damages to a legal certainty, it was also noted above that an informed and reasoned opinion of an expert may be sufficient proof of severance damages. In the present case we were, as was the trial court, impressed with the testimony of LeJeune in this as well as all other regards, and accordingly hold that the plaintiff succeeded in carrying his burden of proof in the establishment of severance damages. In the district court's acceptance of his testimony over that of the other experts, moreover, we can find no manifest error.
In regard to the question of attorney fees, the plaintiff argues that since there was offered no proof that the attorney fees have actually been paid, or an obligation to pay incurred, recovery should be defeated, citing Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956). It was noted by the trial court judge in the present case, and we agree, that the amounts tendered to the defendant in the negotiations attempting to acquire the right of way were substantially less than the amounts awarded by the court; therefore, the defendants were *1204 entitled to reasonable attorney fees. LSA-R.S. 48:453. The statute also provides that such attorney fees shall not exceed 25% of the difference between the award and the amount deposited in the registry of the court. The trial court judge also noted that in view of the extent and nature of the litigation an award of 25% as attorney fees on the excess award was appropriate. In the case of State, Through Dept. of Hwys. v. Frabbiele, 372 So.2d 234 (La.App. 4th Cir. 1979), this court was faced with a case similar to the present one wherein no evidence was presented in the record related to the effort extended, amount of time involved or other evidence to support the trial court's award of attorney fees. The court, therefore, remanded the case to the district court for permitting evidence to be offered in connection with the attorney fees, even though the award amounted to exactly 25% of the difference between the total award and the amount deposited in the court's registry. We find that case distinguishable on the facts from the present case, however, because in Frabbiele, supra, the award of attorney fees amounted to $75,908. In the present case, the attorney fees awarded to each litigant were much smaller amounts and easily recognized as "reasonable" after a review of the long, complex proceedings contained in the entire record. As noted by Judge Boutall in his concurring opinion in Frabbiele, supra, in numerous cases our courts have set attorney fees without requiring an exact measure of proof, and in some cases have used a percentage formula where it seemed justified.
For the reasons assigned, the trial court judgment is affirmed.
AFFIRMED.
SAMUEL, J., concurs with written reasons.
SAMUEL, Judge, concurring.
I am concerned about the speculative nature of the appraisal upon which the trial court relied, an appraisal given by the defendants' expert. However, I cannot say the trial court committed error in so relying.
Accordingly, I respectfully concur.

ON APPLICATION FOR REHEARING
PER CURIAM.
Our opinion inadvertently cited LSA-R.S. 48:453, which provides for the awarding of attorney's fees in expropriation proceedings instituted by the Department of Transportation and Development, State of Louisiana. The correct citation is LSA-R.S. 19:8(A), which provides for attorney's fees in cases such as this one. Accordingly, the original opinion is amended and corrected to substitute LSA-R.S. 19:8(A) wherever reference is made to LSA-R.S. 48:453. Reference to the statute's 25% ceiling on attorney fees is deleted, because LSA-R.S. 19:8(A) sets no limits on attorney fees.
In all other respects, the application for rehearing is denied.
REHEARING DENIED.
SAMUEL, J., concurs in part and dissents in part.
I concur with the Per Curiam insofar as it is applicable to the mentioned statute. However, for the reasons contained in my written dissent, I respectfully dissent from the denial of a rehearing.
SAMUEL, Judge, dissenting.
My concern about the speculative nature of the defendant appraisal upon which the trial court relied, a concern expressed in my concurrence with the majority opinion and decree which affirmed the judgment appealed from, has been confirmed by plaintiff's brief in support of its application for a rehearing.
Six tracts are involved. They are relatively narrow and deep and vary in size from 6 to 21.15 acres. Plaintiff's two experts testified these tracts had a highest and best use of residential or small community commercial and a market value of $1,700 per acre, according to one expert, and $2,000 per acre, according to the other. Basing his conclusion on the possibility of assemblage, defendants' expert was of the *1205 opinion the market value was approximately $10,000 per acre if the tracts were combined with 21 additional contiguous tracts as a site for an industrial complex composed of between 250 and 300 acres; in his view the total assembled tract would have a highest and best use as an industrial site which has a much higher value than either residential or small commercial sites. The trial judge and the majority of this panel set the value at $5,000 per acre, or two and one-half times the value placed on the property by the higher plaintiff appraisal. The defendant expert did not disagree with the $2,000 figure if the highest and best use was residential or small commercial.
It appears the theory of assemblage is res nova in Louisiana. It has been recognized by other courts which hold assemblage is a proper consideration in determining value in expropriation matters, but only if the defendant shows there is a reasonable probability the claimed assemblage can be accomplished in the reasonably near future, and the burden of such proof is on the defendant.[1]
I see no reason why the theory, with sufficient restrictions so as to prevent it from being too remote and speculative, should not be applicable in Louisiana. Thus, the question presented is whether these present defendants have shown it is reasonably probable the assemblage they rely on can be accomplished in the reasonably near future to the extent that, at the time of the taking, an informed buyer would be willing to pay the assemblage increase in price over the value of each tract considered separately. In my view, the evidence contained in the record quite clearly fails to make such a showing. In fact, the showing is to the contrary.
The only evidence offered by the defendants regarding assemblage was the testimony of their expert. While there is a demand for large industrial sites in the area, the record shows there are at least four such sites currently available. The record also shows that the approximate 28 tracts needed for the proposed assemblage are owned by well in excess of 200 persons. Any one or more of those owners effectively could prevent assemblage by refusing to transfer their interests, a risk unlikely to be taken by a purchaser at the time of the taking. Nor is there any showing that any of the owners, even including the defendant owners themselves, would be willing to sell at any price; no attempt has been made to assemble the hypothetical tract. In addition, defendants' expert testified the presence of a pipeline servitude would prevent the tracts in suit from being used as an industrial site. But most or many of the tracts with which the instant six tracts would be combined already are burdened with such servitudes.
Accordingly, I respectfully dissent from the majority's refusal to grant plaintiff a rehearing limited to the issue of assemblage.
NOTES
[1] Modified on other grounds, 369 So.2d 699.
[1] See United States v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; City of Indianapolis, Dept. of Met. Dev. v. Heeter, 171 Ind.App. 119, 355 N.E.2d 429; State v. Long (Ala.) 344 So.2d 754.