CHEHARDY, Chief Judge.
On September 6,1977 the State of Louisiana, Department of Transportation and Development (DOTD), filed suit under LSA-R.S. 48:441-460 (commonly known as the Quick-Taking Statutes) to expropriate 7.58 acres of a 118-acre tract of land in St. James Parish owned by several members of the Nassar family. DOTD, which sought the land for construction of Louisiana Highway 3125, valued the land at $10,-630. On May 20, 1983, following final acceptance of the construction by DOTD, the Nassars filed an answer and reconventional demand claiming additional compensation, as provided in LSA-R.S. 48:450. They sought a total payment of $66,704 ($8,800 per acre) and compensation for mineral rights, but no severance damages.
During pretrial discovery, the Nassars propounded continuing interrogatories requesting DOTD to name all appraisers it had selected to render expert opinions and to list those who would be called to testify at trial. DOTD responded that James Lips *1223 comb and Cari LeBlanc had appraised the property and that James Lipscomb would be called as a witness, although he was no longer employed by the Department. The case was set to be tried on April 18, 1985.
Two days prior to trial, DOTD verbally informed counsel for the Nassars that they intended to call Daniel Carlock rather than James Lipscomb as their expert appraiser. The following day — one day before trial— DOTD supplemented their interrogatory answers to reflect this change.
At trial, the Nassars objected to DOTD’s last-minute substitution of expert witnesses, contending their case was prejudiced by their inability to do pretrial discovery on Carlock. The court ruled that Carlock’s testimony was inadmissible, but that the testimony of Lipscomb would be admitted if he could be produced without delaying the trial. DOTD moved for a continuance, apparently so it could obtain Mr. Lipscomb’s testimony, but the motion was denied.
John Lejeune, the Nassars’ expert in the field of real estate, testified that the best use for the subject property at the time of the expropriation was industrial and that its value was $8,800 per acre.
DOTD, unable to introduce the testimony of Carlock and without Lipscomb at the trial, presented no witnesses.
The court rendered judgment in favor of the Nassars on June 26, 1985. Based on the comparable sales, the testimony of John Lejeune, and the physical characteristics of the land, the court concluded that the best use of the property at the time of the taking was industrial and fixed the market value of the property at the time of the taking at $8,800 per acre.
DOTD appealed to this court, which held that “the trial court's denial of the state’s motion for a continuance left the state in the precarious position of not being able to present any evidence on the sole issue involved: valuation.” State, Dept. of Transp. & Develop. v. Nassar, 483 So.2d 1149, 1152 (La.App. 5 Cir.1986). Accordingly, we remanded the case, instructing the trial court “to re-determine [the] issue on the basis of the original evidence and any additional evidence, including testimony, adduced by the. parties.” Id., at 1152.
At a pretrial conference on June 25, 1986, the trial judge informed the parties that DOTD would be allowed to present the testimony of either Carl LeBlanc or James Lipscomb, but not that of Daniel Carlock. Subsequently DOTD took Carlock’s deposition.
The case was reopened for the additional testimony on September 5, 1986. At trial DOTD called Carlock as a witness. The judge refused to allow him to testify. The State proffered Carlock’s deposition, but called no other witnesses. The trial judge again held in favor of the defendants, valuing the property at $8,800 per acre, and DOTD again appealed.
On this appeal DOTD asserts the trial court erred in the following respects: (1) in valuing the property at $8,800 per acre; (2) in refusing to allow Carlock to testify; and (3) in granting additional compensation to the Nassars on all 7.25 acres, when their rights and interests in 2.04 acres of that property were sold by the Nassars to B.F. Goodrich subsequent to expropriation and prior to the Nassars’ demand for additional compensation.
Because the admissibility of Car-lock’s testimony is crucial, we address that issue first. DOTD contends that the language of this court’s previous opinion in this case (Nassar, supra) clearly expresses the intent that Carlock’s testimony be admitted at the reopening of the trial. A careful reading of that opinion confirms this interpretation. In addition, the fact that Carlock’s deposition was taken prior to the second trial invalidates the Nassars’ objection that they had no opportunity for discovery related to Carlock. Consequently, we find the trial court erred in refusing to consider Carlock’s proffered deposition in determining value of the subject property-
Carlock’s determination that the highest and best use of the subject property at the time of the expropriation was industrial is undisputed. Using three com *1224 parable prior sales and considering numerous others, Carlock set the property's value at the time of the taking at $3,000 per acre. This differs greatly from the value ascertained by John Lejeune.
Lejeune based his valuation of $8,800 per acre on calculations derived from a post-expropriation sale of a portion of the property. Specifically, he testified that in November 1978 the Nassars sold a portion of their land to B.F. Goodrich, for use as a utility corridor, at a per-acre price of $10,000. Using that figure, Lejeune subtracted 1% per month going back to September 1977, the time of the taking; as a result, the per-acre price he reached for this case was a 12% reduction in the per-acre price of the Goodrich sale.
Lejeune additionally testified that the market value of the expropriated property was enhanced by its plottage value:
“Plottage value is an increment of value as a consequence of the combining of two or more sites so as to develop one site having a greater utility than the aggregate of each when separately considered or the value of an existing site of unusual size or special shape which has greater utility than average tracts for more conventional smaller or larger size. * * *.”
The evidence reflects that the adjoining B.F. Goodrich tract had been commercially-owned since 1974. It is apparent, therefore, that at the time of the taking or shortly thereafter the expropriated property could have been sought by adjoining landowners to gain access to utilities and pipelines otherwise inaccessible due to the Nasser tract’s location.
LSA-R.S. 48:453 states, in pertinent part,
“A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.”
Post-expropriation sales are not considered probative in determining the market value at the time of taking. State, Department of Highways v. Colby, 321 So.2d 878 (La.App. 1 Cir.1975); State, Department of Highways v. Christy, 283 So.2d 533 (La.App. 1 Cir.1973). However, it is appropriate to consider the manner in which property can be reasonably used in the near future when computing market value. United Gas Pipe Line Co. v. Becnel, 417 So.2d 1198 (La.App. 4 Cir.1982). Such a circumstance merits an increase in the market valuation of the property here. Considering all the evidence presented, therefore, we find the trial court’s valuation of the property at $8,800 per acre at the time of the taking was not manifestly erroneous.
The third issue raised by DOTD is whether the Nassars should not have received the additional compensation on the 2.04 acres sold to B.F. Goodrich prior to the trial. This constitutes an affirmative defense, which should properly have been set forth in their answer. LSA-C.C.P. art. 1005. Webster v. Rushing, 316 So.2d 111 (La.1975); Paxton v. Ballard, 289 So.2d 85 (La.1974).
Further, the record reflects that appellant failed to raise the issue before the trial court. While LSA-C.C.P. 2164 gives the appellate court the authority to render any judgment which is just and proper on the record, this authority does not extend to the consideration of defenses first raised at the appellate level. Gulf Shipping Co. v. McQuilling, 430 So.2d 1322 (La.App. 5 Cir.1983); Young v. Warner, 283 So.2d 547 (La.App. 1 Cir.1973). Therefore, we decline to consider that issue.
For the reasons assigned, the judgment is affirmed. Costs are assessed against appellant.
AFFIRMED.