## MACON AND STEPHENS v. OWEN.

1. In proceeding by writ of *ad quod damnum*, to establish a mill, its location
should be ascertained, either by the inquest or the judgment of the Court, with
sufficient certainty of description to enable a surveyor to find the place desig-
nated.   Nothing can be claimed under a grant to build a mill in number seven,
of township nineteen, of range twenty-five ; as the location is not sufficiently
definite.
2. Where a writ of *ad quod damnum* was sued out on the seventh of Septem-
ber, 1836, returnable to the next term of the Orphans' Court, (which holds its
sessions monthly) and no proceedings are had on it until the next February,
it is to be considered as abandoned, and a grant to build a mill, afterwards
made on this writ, will not over-reach a grant made to another, who sued out
his writ in December, 1836, and prosecuted it without delay, so as to obtain a
judgment in January, 1837.

Writ of error to the Circuit Court of Macon county.

ACTION on the case, for overflowing a mill erected by the
plaintiffs.    The defendant pleaded not guilty, and a verdict
was found in his favor, on which judgment was entered.

A bill of exceptions was sealed at the trial, at the instance
of the plaintiffs, which discloses that they gave in evidence the
exemplification of certain proceedings had in the County Court
of Macon county, on a writ of *ad quod damnum*, sued out by
them on the 5th day of December, 1836, and returnable to the

next Orphans' Court. A jury was summoned, who returned their inquest, which states as follows: " We, the jury, being duly summoned, and being sworn, have examined particularly, the creek, its banks, descent, &c. on the south half of section six, township nineteen, of range twenty-five, in Macon county, and agree fully in saying, that Pleasant Macon and Solomon Stephens shall have liberty to erect a saw or grist mill, or both.

Messrs Macon and Stephens own the land on both sides the stream; the pond will be small, the banks high, consequently, not at all a nuisance to the settlement, and interfering with no person, either by overflowing land, orchard, lot, dwelling or curtilages. We find no damage accruing from the erection of said mill or mills, to be built on the lower shoal on said creek, on the south half of section six, as above described.

In witness whereof, &c.

The writ and inquest were returned to the Orphans' Court of said county, on the first Monday of January, 1837, and the Court then made an order, which, after reciting the proceedings by the sheriff and jury, proceeds thus: " And the Court being sufficiently advised in the premises. and it appearing that the facts in said inquest are correct,—it is ordered and determined that the said Pleasant Macon and Solomon Stephens have liberty to build a mill on the said south half section six, &c. in Macon county."

The defendant gave in evidence the exemplification of certain other proceedings had in the same Court, on another writ of *ad quod damnum*, sued out at his instance, on the 7th day of September, 1836, returnable to the next term of the Orphans' Court. This was executed on the 24th of the same month, but no proceedings were had by the Orphans' Court on the writ and inquest until the first Monday of February, 1837; at which term the inquest was returned with the writ. The inquest is stated in these terms: We, the jury, do certify that we have examined a mill shoal, according to the order granted to Robert Owen, of Chambers county, and believe it to be to the benefit of the public, and grant him leave to erect a set of mills on number seven, in township nineteen, of range twenty-five, in Macon county, and to put a dam on the same, to be ten feet high; and further, have given to Pleasant Macon the sum of fourteen dol-

lars and fifty cents, the damages assessed by us. Whereupon, it appearing to the Court that the said jurors were sworn and charged by the said sheriff, impartially and to the best of their skill and judgment, to view the lands upon which it was proposed to erect said mills, to examine the lands above and below, the property of others, which might be overflowed, to say what damages it would be to the several proprietors, offices, curtilages or gardens, thereunto belonging, or orchards, would be overflowed; to inquire whether, in their opinion, the health of the neighbors would be endangered by the stagnation of the waters. And the Court being sufficiently advised in the premises, and it appearing further that the facts in the inquest are correct.— It is, therefore, ordered and determined, that the said Robert Owen shall have leave to build the mills on the said number seven, in township nineteen, of range twenty-five, in Macon county.

The plaintiffs proved that they erected their mill and dam at the place, on the south half of section six, which was received by the jury, and recommended by them in their inquest.

The defendant subsequently erected his dam and mill, and it was in evidence that when he raised a head of water, the plaintiffs mill was drowned.

On this state of facts, the Circuit Court instructed the jury, that so far as this action was concerned, the right of the defendant to build and enjoy his mill, was superior to that of the plaintiffs, and would protect him against an action for nuisance arising from such building, unless the fourteen dollars and fifty cents were assessed for the interest of the plaintiffs, on their mill shoal, or something connected with it.

The plaintiffs excepted to this charge. Other evidence was before the jury, and other charges given, which it is unnecessary to set out, as the opinion of the Court turns on that already stated.

PECK, for the plaintiffs in error, cited Hendricks v. Johnson, 5 Porter, 208; and Johnson v. Hendricks, 6 Porter, 472; Aikin's Digest, 324; ib. 2d. ed. 577.

CAMPBELL, contra.

GOLTHWAITE, J.—1. The relative rights of different proprietors of the soil to the use of water flowing by the same

stream, through their respective domains, was considered by us in the case of Hendricks v. Johnson, 6 Porter, 472.

In the case now to be examined, it appears that the plaintiffs occupy a position on the stream more favorable than is possessed by the defendant, inasmuch as they are nearer to its source. The former have, therefore, a right to a remuneration for the damages they have sustained by the act of the latter, in overflowing their mill, unless this right has been divested in the manner allowed by the statute.

The defendant insists that such is the effect of the proceedings had in the Orphans' Court of Macon county, on the writ of *ad quod damnum,* sued out at his instance. We think, however, that no right whatever, has been vested in him; and for two reasons: first, the inquest of the jury and the judgment of the Court, is entirely too indefinite. The inquisition returned with the writ, certifies that the jury examined a mill shoal, according to the order granted, and gave him leave to erect a set of mills on number seven, of township nineteen, of range twenty-five, in Macon county. The judgment of the Court is not more definite. It is perfectly clear that this grant, if available at all, gives to the defendant the privilege of erecting his mills at any place on the creek, within the compass of one mile, as that is the length of a section of land. We do not consider the statute as authorising the Orphans' Court, to make so indefinite a grant.

The 4th section of the act of 1812, which prescribes the mode to be pursued, when the applicant for the writ of *ad quod damnum* is the owner of the land on both sides of the stream, refers to the first and second sections of the same act. These, when examined, are found to contain precise directions, with respect to the location of the abutments for the mill, where the applicant is not the owner of the lands on both sides. The jury is to view the lands proposed for the abutment, and to locate and circumscribe by certain metes and bounds, one acre thereof, having due regard to the interest of both parties. Aikin's Digest, 324. We have already held, in the case before cited, that the act referred to, not only confers, but also divests rights; and it is in many cases, of much importance, that the precise location of the mills proposed to be erected, should be ascertained, as otherwise, collisions might frequently happen

between contiguous proprietors, especially, when the descent of the stream is great within a short distance. The location then, in our opinion, should be ascertained, either in the inquest or by the judgment of the Court, with sufficient certainty of description, to enable a surveyor to find it.

Second. The proceedings at the instance of the defendant, were commenced, by issuing the writ on the 7th day of September, 1836. This writ was returnable to the then next stated term of the Orphans' Court, but was not then returned, nor was any further proceedings had on it by the Court, until the first Monday of February, 1837. In the mean time, the plaintiffs had proceeded without delay, and after the defendant might be presumed to have abandoned his application, by reason of his delay in prosecuting his writ. We entertain no doubt that the prior application, if prosecuted without delay, would have conferred the right; indeed, it was so determined in the case of Hendricks v. Johnson, before cited; but here, the defendant voluntarily abandons his writ, and can have no claim now to be considered as having first appropriated the statutory right. It may be remarked, that the inquest taken at the instance of the plaintiffs, designates the location of their mills at the lower shoal on the creek, in the south half of section six.

This leads to the conclusion that the Circuit Court erred in instructing the jury that the right of the defendant was superior to that of the plaintiffs.

For this error, the judgment is reversed, and the case remanded.