# Mobile & Ohio Railroad Co. *v.* Hester.

*Proceedings to condemn Right of Way for Railroad.*

1. *Condemnaton of right of way; measure of damages.*—In proceedings to condemn a right of way for a railroad through lands of another, the measure of damages is the value of the lands when taken by the railroad company before any injury thereto, resulting from the construction of the railroad, and the injury or diminution in value caused by the construction of the road to the remaining and contiguous lands, with interest on the sum thus ascertained.

2. *Same; same; danger of fire.*—In estimating the compensation to the land owner in a proceeding to condemn a right of way for a railroad company across his lands, when a part of the tract is taken, danger from fire to buildings, fences, timber or crops upon the remainder of the land, in so far as it depreciates the value of the property, may be considered.

3. *Same; same; charge to the jury.*—In a proceeding to condmn the right of way of a railroad company over certain lands, where it is shown that the right of way designated passed near houses upon the remaining portion of the land, instructions to the jury that the possibility of the destruction of the houses on the owner's lands in the future could not be made the basis for allowing damages therefor, is properly refused as being calculated to mislead the jury to the belief that the liability of the improvements to fire in the future from the operation of the railroad could not be considered even in determining the present value of the property remaining after that taken by the railroad for its right of way.

4. *Pleading and practice; reading of extracts from decisions by court in its general charge.*—The fact that in a condemnation proceedings the court in its general charge to the jury reads

[Mobile & Ohio Railroad Co. v. Hester.]

extracts from the decisions of another State, which were designed as merely illustrative of the general principles of law governing juries in ascertaining the damages for compensation in such cases, does not constitute a reversible error, where it is apparent that the jury was not misled by such extracts to the prejudice of the party appealing, even though such extracts may have. referred to elements of compensation not in the case and were, to that extent, abstract.

5. *Condemnation proceedings; form of judgment.*—In a condemnation procedings upon the return of a verdict by the jury assessing the compensation to which the owner of the land was entitled, such verdict should be recorded and the judgment rendered should order a condemnation in pursuance thereof upon the payment of the sum ascertained and assessed by the verdict, or the deposit of the sum in court for the defendant, (Code of 1896, § § 1719, 1721); and, therefore, the rendition by the court upon the return of the verdict of a monied judgment as in debt or in assumpsit on which the execution should issue is erroneous.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

The proceedings in this case were instituted by the appellant, the Mobile & Ohio Railroad Company, filing a petition addressed to the probate judge of Tuscaloosa County asking for the condemnation of a right of way through the lands of the appellee, William Hester.

On the hearing of the application, there was a decree of condemnatiaon and commissioners appointed to assess the damages. Upon the report of the commissioners, the probate court rendered a final decree, assessing the damages of the respondent at $750. From this decree the petitioner appealed to the circuit court. In the circuit court the question at issue was the amount of damages that should be allowed the respondent for the right of way sought to be condemned, and the facts in reference thereto, so far as are necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The bill of exceptions recites, that "As a part of his oral and general charge to the jury, the court adopted as a part of such charge, and read to the jury, extracts from the opinion rendered by the Supreme Court of New Hampshire in the case of *Adden vs. White Mountain*

[Mobile & Ohio Railroad Co. v. Hester.]

*Railroad,* 55 N. H. 413 ;" and that to the reading of each such extracts the Mobile and Ohio Railroad Company separately objected and excepted.

The petitioner requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (3.) "The compensation allowed for the right of way should be direct and proximate and not remote and contingent upon circumstances which may or may not transpire. The possibility of the future destruction of buildings or like improvements by fires is a field of inquiry so remote and contingent as to be without and beyond any range of damages known to the law in this case." (4.) "Mere prospective damages from fires which may occur during the future operations of the railroad are not proper elements of damages for consideration by the jury in this case." (5.) "The court charges the jury that in estimating damages in this case they have only to determine the difference in value of the defendant's plantation before and since the appropiation of the right of way by the plaintiff, and they may not consider any remote damages for fires that may be hereafter occasioned by the operation of plaintiff's railroad."

The verdict of the jury was as follows : "We the jury find the issue for the defendant for damages to plantation and assess the damages at one thousand dollars." Upon this verdict the court entered the following judgment, after setting out. said verdict: "It is therefore considered by the court, and it is the judgment of the court, that the defendant have, and recover of the plaintiff in the sum of one thousand dollars, the damages assessed by the jury, together with the costs in this behalf expended for which let execution issue," &c.

The petitioner appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

E. L RUSSELL and FITTS & FITTS, for appellant.— The 3d, 4th and 5th charges asserted a correct proposition of law and should have been given. The possibility of a future destruction of buildings and like improve-

ments by fire is a field of inquiry too remote and contingent to be taken into consideration in determining the compensation to which the land owner is entitled in the condemnation proceeding.—*Lance v. R. R. Co.,* 57 Iowa 636; *Wilmington R. R. Co. v. Stauffer,* 60 Pa. St. 374;*In re Union Village R. R. Co.,* 53 Barb. (N. Y.) 457.

HENRY B. FOSTER, *contra.*

HARALSON, J.—The measure of damages in cases of this character, as established in this court, sustained by many decisions elsewhere and text-writers is, the value of the land when taken by the railroad company before any injury thereto resulting from the construction of the road, and the injury or diminution in the value thereby caused to the remaining and contiguous lands, with interest on the sum thus ascertained.—*Jones v. N. O. & S. R. R. Co.,* 70 Ala. 227; *First Nat. Bank of Gadsden v. Thompson,* 116 Ala. 166; *Lynn v. G. B. & M. R. Co.,* 42 Wis. 553; *M. & O. R. R. Co. v. Postal Tel. Co.,* 120 Ala. 21; 3 Elliott on Railroads, § 995; 6 Am. & Eng. Ency. Law, 567.

In arriving at this difference in value of the land before and after the taking, when a part only is taken, various elements of damage are to be considered, such as the difficulty of access and of communication between the different parts; the expense of constructing crossings; the interference with the drainage of the land, or the flow of surface water or with the water supply; the injury to grass and crops; cost of fencing rendered necessary for the reasonable use and enjoyment of the remainder; danger of fire from passing engines and like. For illustrative instances of matters to be considered in estimating these damages, see Mills on Em. Dom. § 163; Lewis on Em. Dom. § § 496-499; 3 Elliott on Railroads, § § 995, 996, 1127. As for damage from fire, Mr. Lewis lays down the rule, consonant with reason and authority, to be that "when a part of a tract is taken for railroad purposes, danger from fire to buildings, fences, timber or crops upon the remainder, *in so far as it depreciates the value*

*of the property,* may properly be considered. It is immaterial that the railroad company is made absolutely liable for all losses by fire which originated from the operation of the road, whether they result from negligence or otherwise. Such a liability would doubtless render the depreciation in value less than in cases where the company was liable only for fires resulting from negligence. It is to be borne in mind that compensation is not to be given for increased exposure to fire, nor for increased insurance rates, nor from probable losses by fire in the future for which no recovery can be had, but simply from depreciation in value of the property by reason of the danger from fire. The evidence should, therefore, be limited to showing all the facts in regard to the situation of the property and improvements relatively to the railroad and perhaps to showing the distance from the road to which the danger extends. Evidence of actual damages by fire before the assessment of damages should be excluded."—Lewis on Em. Dom., § 497 The present value of buildings for residence or other farm purposes, common experience teaches is diminished by the effect of constant liability to fire on account of their proximity to a railroad; and to such matters, the jury may consult their own knowledge and experience in arriving at a correct verdict, as to the deterioration in value of the portion of the land not taken.— *Rosenbaum v. The State,* 33 Ala. 355; *Weaver v. Shropshire,* 42 Ala. 230, 233; Mills on Em. Dom., § 154.

In some cases, it has been held, that it is incumbent on one who claims damage on this ground, to show that the company's track ran so near the buildings "as to cause *imminent* and *appreciable* danger by fire."—Redfield on Railways (5th ed.), § 74 n. 11; 6 Am. & Eng. Encyc. of Law, 550. "A broader view," says Mr. Randolph, "is taken in decisions which do not insist upon the imminence of the risk, but simply require evidence of the depreciation on account of it." He collates the decisions *pro* and *con.*

In the case before us, witnesses were examined as to the damages the owner sustained to the remainder of his lands in consequence of the running of the railroad through them. It ran through his settlement on the

farm, dividing the buildings, leaving some of them on one and some on the other side of the track. The witnesses examined on the subject gave different estimates of the damages, and those who testified on the subject, also differed as to the proximity of the buildings to the railroad track. One of them testified that the road ran between the dwelling and the barn, about 200 feet from the barn, and about 200 or 300 feet from the house. Another, that the track ran about 250 feet from the dwelling, and the barn was about 50 feet from the right of way. Another, that there were some cabins on or near the right of way. Another, still, deposed, that it ran in the neighborhood of 150 feet from the house, and yet another that the barn was about 70 or 80 feet from the right of way, and that there was a double cabin between the house and right of way. The owner, William Hester, testified that the right of way ran about 125 feet from the dwelling and 18 feet from the barn; that he had measured the distance of the barn from the right of way, but had not measured the distance therefrom to the dwelling, and that the barn was a very fine one, and to build one like it would cost about $1500.

The court, at the request of the owner of the land, the appellee here, charged the jury in substance, that in measuring the damages it was proper to take into consideration the matters affecting the market value of the property appropriated; that matters of mere fancy, conjecture or the like should be strictly excluded from consideration; that the rule for measuring damages in the case was, that the owner was entitled to the difference between the market value of the whole of the plantation bisected, before the taking, and the market value of all that remained to him after the taking, uninfluenced by any general rise in value due to the erection of the improvement, and likewise uninfluenced by any prospective accidents which might in the future befall his premises, by reason of the operation of the improvement thereon; that fires, such as might be hereafter occasioned by the operation of the railroad, should not be considered by the jury, further than the possibility of such fires affected the present value of the property of the owner. These charges appear not to have been

excepted to by the railroad company. They certainly contain no error of which it can complain. We have referred to them in elucidation of other charges to which it did except, and assigns as error.

The charges numbered 3, 4 and 5 requested by defendant, assert about the same proposition in different forms, —that the possibility of the destruction of the houses on the owner's land in the future, could not be made the basis for allowing damages therefor, in this condemnation proceeding. The court had just charged the jury very correctly, that the possibility of fires might be considered as affecting the present value of the property, and not in themselves to be considered damages to be now allowed. These charges were calculated to mislead the jury and impress them, that the liability of the improvements to fire in the future, from the operation of the defendant's railroad, could not be considered, even in determining the present value of the property remaining after that taken by the railroad, and were in contravention of the charge just given the jury by the court on that subject.

The extracts from the decision of the New Hampshire court read by the court to the jury in its general charge, were designed as merely illustrative of the general principles of law governing juries in the ascertainment of compensation in such cases. If they referred to elements of compensation not in this case, and were to that extent abstract, or calculated to mislead, we would not reverse on that account. It is apparent that the jury were not misled by them to the prejudice of the appellant.—3 Brick. Dig. 113, § § 106, 107.

The judgment was not such an one as is authorized in proceedings of this character. It was never within the contemplation of the statute that a monied judgment should be rendered, as in debt or assumpsit, as was here done, on which an execution should issue. The verdict of the jury should be recorded, and an order of condemnation entered in pursuance thereof upon the payment of the sum ascertained and assessed by the verdict, or the deposit thereof in court for the defendant, which shall vest in the applicant the easement proposed to be acquired for the uses and purposes stated in the appli-

cation, and for no other uses or purposes.—Code, § § 1719 (3212), 1721 (3216). The applicant has the option to pay the assessment at any time within six months thereafter, or in case an appeal is taken, within six months after the appeal is determined; but if he fails to pay the same within such time, the assessment no longer binds the owner, and the rights of the applicant thereunder shall determine.—Code, § 1722 (3218); *Commissioners' Court v. Street*, 116 Ala. 28.

The verdict of the jury was in proper form, and authorized a judgment to be rendered thereon in accordance with the statute. The court having rendered an erroneous judgment on this verdict, the same will be reversed and set aside; and a proper judgment will be here rendered on the verdict,—such a judgment as the court below should have rendered thereon.

Reversed and rendered.