103 So.2d 143

## JEFFERSON COUNTY
v.
## Roy H. ADWELL.
**6 Div. 809.**

Supreme Court of Alabama.
June 30, 1956.

Rehearing Granted March 6, 1958.

Further Rehearing Denied June 12, 1958.

Maurice F. Bishop, Birmingham, for appellant.

Albert Boutwell and Mayer U. Newfield, Birmingham, for appellee.

PER CURIAM.

A majority of the Court concur in the opinion of Justice LAWSON, which appears below, except in the following particular.

The difference of opinion is as to the time when the value of the land taken and the injury to other lands of the owner should be subject to ascertainment on condemnation under section 235 of the Constitution and enabling statutes. We agree that the correct formula for fixing that time is stated in Jones v. New Orleans & S. R. Co., 70 Ala. 227, as follows: "The value of the land when taken, before the construction of the road, and before any injury to the land taken resulting from construction, and the injury, the diminution in value of the contiguous lands, is the true and just measure of the compensation". This principle has been adhered to by later cases as pointed out in the opinion of Justice Lawson.

We do not agree with his conclusion that the time of taking is the occasion of the filing of the petition to condemn. It was however so stated in Smith v. Jeffcoat, 196 Ala. 96, 71 So. 717. But that statement was not material to any issue in that case. It was apparently not argued and no apt citation of authority appears. It was evidently a feature of the Court's argument to prove something else, for there was no argument to prove that statement. We believe the current of the argument in the Jones case, supra, and the other cases cited by Justice Lawson do not support that conclusion stated in Smith v. Jeffcoat.

The difficulty involved in the inquiry is to fix the time of the "taking" for the purposes now under consideration. Other purposes are not here important. Section 3, Title 19,

provides for filing in the probate court an application to condemn. Such application may include different tracts of land owned by different persons, all of which are "proposed" to be taken. Section 4, Title 19, provides for setting a date for hearing the application and requiring notice. But by section 8, Title 19, the court is not required to treat the proceedings as a "joint action" as to the separate tracts. By section 10, Title 19, a hearing must be had and conducted and evidence taken as in civil cases at law.

By section 11, Title 19, if the application is granted, the probate judge shall appoint three citizens of the county as commissioners. By section 13, Title 19, the commissioners are directed to assess separately the damages and compensation to which the several owners and others interested in each tract are entitled. The commissioners *may view the land* to be subjected and receive all legal evidence offered by any party touching the amount of damages the owners and others interested are entitled to receive. By section 16, Title 19, the commissioners are directed to report within twenty days as to the damages and compensation ascertained and assessed by them for the owners of each tract and others interested. Thereupon the probate court must order the report recorded and make orders of condemnation in pursuance thereof effective upon the payment of the damages and compensation so assessed and reported, or a deposit of same in court. That is the first order of condemnation by the probate court. But the condemnation is not complete until payment of the damages and compensation or deposit of it is made. If no appeal is taken that completes the court procedure. If an appeal is taken by section 17, Title 19, it is triable de novo in the circuit court. Without regard to the time when or whether the petitioner actually enters upon the land, either without an appeal, or pending the appeal under sections 18 and 24 of Title 19, we think the "taking" for the purpose of fixing the amount of damages and compensation is when the commissioners make their report, on which the probate court shall order the condemnation.

The rulings of the trial court were not in accord with this view. Therefore the judgment should be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON and SPANN, JJ., dissent.

LAWSON, Justice (dissenting in part).

This is an appeal from a judgment of the circuit court of Jefferson County rendered in a condemnation proceeding instituted by Jefferson County in the probate court of that county to acquire land for state highway purposes. Tit. 23, § 25, Code of Alabama 1940, as amended.

The application for the order of condemnation was filed in the probate court on December 4, 1952, and included several tracts of land with which we are not here concerned. See § 8, Tit. 19, Code of Alabama, 1940. The property here involved, referred to in the application as "Tract No. 1" was needed in connection with the widening and improving of the old Birmingham-Montgomery Highway (U. S. Highway 31). Tract No. 1 was described in the application as "All of that part of Lots 16, 17, 18, 19 and 20 of Block 17 of the South Birmingham Heights Land Company Subdivision, the map or plat of which is recorded in Map Book 7, page 41, in the office of the Judge of Probate of Jefferson County, lying westerly of the present right of way line of U. S. Highway No. 31 and containing 0.72 acres more or less." At the time the application was filed in the probate court a brick front building used and operated as a night club called "Shades Mountain Country Club" was situated on "Tract No. 1." Roy H. Adwell and the First National Bank of Birmingham were said in the application to claim or assert some title or interest in the property described above. It is without dispute that at the time the application was filed in the Probate Court, Adwell was the owner of the property, subject to a mortgage thereon held by the First National Bank of Birmingham.

In accordance with the provisions of § 4, Title 19, supra, the probate court upon the

filing of the application, made and entered an order appointing December 22, 1952, for the hearing of the application. On the appointed date the hearing was held, and an order made granting the application. § 7, Tit. 19, supra. In the same order the Judge of Probate appointed three commissioners "to assess the damages and compensation to which the said owners of said land sought to be condemned are entitled." The commissioners were ordered to report as to their findings within the time prescribed by law. §§ 11–16, Title 19, supra.

On December 24, 1952, before the commissioners had viewed the property here involved or had taken any steps towards ascertaining the damages and compensation to which the owner might be entitled, the night club situated on the property was partially destroyed by fire.

Thereafter, on January 19, 1953, the commissioners viewed the property and took testimony as to its value. Another such hearing appears to have been held on either February 2 or 3, 1953. The commissioners filed their report on February 3, 1953, wherein the damages and compensation due to the owners were fixed at $18,275. This figure admittedly was not based on a consideration of the value of "Tract 1" prior to December 24, 1952, the date of the fire.

On February 20, 1953, a decree was rendered in the probate court adjudging that the county having paid into court the full amount of the damages and compensation assessed by the commissioners, has an easement and right of way for public road and public highway purposes, etc., over and upon the property here involved. § 16, Title 19, supra.

On March 4, 1953, a written "Notice of Appeal" was filed in the probate court, which in pertinent part reads: "Comes Roy H. Adwell, respondent in the above entitled cause, and prays for and hereby takes an appeal to the circuit court of the 10th Judicial Circuit of Alabama, from the order of condemnation entered in said cause on the *3rd day of February, 1953,* in so far as said order of condemnation relates to the land described as Tract 1," etc. (Emphasis supplied.) Thereafter on March 20, 1953, the Judge of Probate transmitted to the

clerk of the circuit court of Jefferson County copies of the application for order of condemnation and other pertinent papers, all of which were forthwith received and marked filed in the office of the circuit clerk. On the same day, March 20, 1953, the circuit clerk executed a receipt reading: "Received Probate Court Check No. 1107, in the sum of Seventeen Thousand Five Hundred and no/100 ($17,500.00) Dollars covering above award." Why the check was for $17,500 instead of $18,725, the amount fixed by the appraisers, does not appear, and we are not here concerned with that question.

On March 24, 1953, the State of Alabama, on whose behalf Jefferson County instituted this proceeding, went into possession of Tract 1 and immediately began road construction. Apparently the State's action followed the giving of bond by the condemnor as provided by § 18, Title 19, Code 1940.

Adwell did not make demand for jury trial in the circuit court, but the condemnor, Jefferson County, did file a written demand for jury trial on August 31, 1953, which demand was on the same day stricken on motion made by Adwell.

Thereafter, on October 15, 1953, Jefferson County filed a motion to dismiss Adwell's appeal, which motion was overruled on the day it was made.

After being continued from time to time by consent, the cause came on for hearing on August 19, 1954, before the Honorable J. Russell McElroy, the presiding judge of the Tenth Judicial Circuit, Jefferson County.

Before the taking of testimony was begun, the trial court announced that all of the parties agreed in open court on the following matters, among others: (1) that the land involved was subject to the order of condemnation and was properly ordered condemned by the probate court; (2) that the interests of Adwell and the First National Bank of Birmingham in the suit property were the same as on the day the application for condemnation was filed in the probate court, except as affected by the order of condemnation made and entered in the probate court; (3) that the only issue before the court was the proper amount

of "just compensation to be paid the respondent for the land which has been condemned."

During the course of the trial in the circuit court motions made by Jefferson County, the condemnor, to dismiss or discontinue the condemnation proceedings were overruled.

On September 14, 1954, the trial court rendered a judgment in favor of Adwell in the sum of $50,620.03. It is from that judgment that this appeal was taken.

It is the position of Jefferson County, the appellant here, that the notice of appeal filed by Adwell in the probate court on March 4, 1953, was insufficient to confer jurisdiction on the circuit court in that the notice did not adequately describe the order or judgment sought to be appealed, and, hence, the circuit court erred in overruling the county's motion to dismiss Adwell's appeal.

■■ The effect of our holding in Stanton v. Monroe County, 261 Ala. 61, 72 So. 2d 854, is that in cases of this character the circuit court is without jurisdiction unless the appeal is from the order of condemnation. On March 4, 1953, the day on which the notice of appeal was filed, the order of condemnation entered on February 20 of that year was the only appealable order. The notice of appeal recites in effect that Adwell prays for and takes an appeal to the circuit court from the order of condemnation entered in the probate court on the 3rd day of February, 1953. As heretofore shown, the order of condemnation was not entered on that day and the use of the wrong date does make the notice of appeal somewhat uncertain and ambiguous. However, since the notice of appeal refers to the judgment of condemnation, the only appealable order, the opinion prevails that the County was not misled by the insertion of the incorrect date and that the trial court correctly refused to dismiss Adwell's appeal to the circuit court. Title Guarantee & Trust Co. v. Lester, 216 Cal. 372, 14 P.2d 297; Bedke v. Bedke, 57 Idaho 443, 65 P.2d 1029; Nelson v. City of Osawatomie, 148 Kan. 118, 79 P.2d 857; In re Hore's Estate, 220 Minn. 365, 19 N.W.2d 778, 160 A.L.R. 1064; Thiess v. Rapaport, 57 Nev. 434, 66 P.2d 1000, 69 P.2d 96.

■ The circuit court did not err in striking the County's demand for a jury trial made on August 31, 1953. Jefferson County was served with notice of the appeal on the day that it was filed which, as shown above, was on March 4, 1953. The failure of the County to request jury trial within ten days from the date of service of notice of appeal constituted a waiver of right to trial by jury. § 264, Title 7, Code 1940; Moore v. City of Mobile, 248 Ala. 436, 28 So.2d 203. See Morgan County v. Griffith, 257 Ala. 401, 59 So.2d 804. We said nothing in the case of Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So.2d 795, 9 A.L.R.2d 974, in conflict with the holding in the Moore case, supra. In the Thompson case, supra, the request for jury trial was timely made.

■ Appellant contends that it had the right to abandon the condemnation proceedings while the cause was pending in the circuit court on appeal from the probate court and insists that the circuit court erred to a reversal in overruling the county's motion to dismiss or discontinue the proceedings. We have cases including Alabama Midland Ry. Co. v. Newton, 94 Ala. 443, 10 So. 89, the only authority cited by appellant in support of this insistence which holds, in effect, that by virtue of the provisions now codified as § 25, Title 19, Code 1940, an order of condemnation becomes ineffective and the rights of the parties thereunder are determined if the damages and compensation assessed are not paid by the condemnor within the time fixed by the statute. Mobile & Ohio R. Co. v. Hester, 122 Ala. 249, 25 So. 220; Stout v. Limestone County, 211 Ala. 227, 100 So. 352; Grief v. City of Homewood, 257 Ala. 181, 58 So. 2d 120; but those cases are not supportive of the assertion made by the appellant to the effect that a condemnor who obtains an order of condemnation in probate court which is appealed to the circuit court and who pays into court the amount of the assessment and makes bond as provided in § 18, Title 19, Code 1940, and thereupon takes actual possession of the property ordered condemned, can, as a matter of right, after the cause comes on for hearing in the circuit court, abandon the condemnation proceedings in toto and retain the possession and control of the condemned property.

In Mobile & Ohio R. Co. v. Hester, supra, the provisions of § 1722, Code of 1896, now contained in § 25, Title 19, Code of 1940, were summarized in connection with the holding that in a case of this kind there should not have been a moneyed judgment against the condemnor. In the Newton case [Alabama M. Ry. Co. v. Newton, 94 Ala. 443, 10 So. 89], decided in 1891, the order entered in the probate court was not appealed and the condemnor did not go into possession of the suit property. In the Stout case, it was said that under § 3883, Code of 1907, now § 25, Title 19, Code of 1940, the order of condemnation became ineffective if the condemnor did not pay the assessment within the prescribed time. No question as to the right of the condemnor to abandon the proceedings after going into possession was involved. In the Grief case, supra, there was no appeal from the order of condemnation and the award made in the probate court. The City of Homewood did not go into possession of the suit property. We merely observed that after the expiration of six months from the date of the order of condemnation, the condemnor not having paid the award, the landowner was entitled to institute an action of debt against the City of Homewood in the circuit court to recover for expenses incurred in connection with her defense of the suit in the probate court.

There is a comprehensive treatment of cases involving the general right of the condemning party to abandon the condemnation proceedings, time at which such right can be exercised and the effect of abandonment on the rights of parties, to be found in 121 A.L.R. beginning at page 12. An examination of the cases there annotated discloses that the courts of many of the states have declared that condemnation proceedings may be discontinued as of course, if application to do so is made at the proper time. The difficult question to answer is "Until what time?" Generally speaking, the answer to this question is determined by the applicable statutory provisions of the particular states. We have no statutory provisions which regulate the stage at which the condemning party may dismiss or abandon condemnation proceedings except those now codified as § 25, Title 19, supra, which, as we have heretofore shown, relate to conditions after final judg-

ment where there has been no payment of the award and no taking of possession. The only Alabama cases included in the A.L.R. Annotation, supra, which are at all pertinent are based on the provisions now codified as § 25, Title 19, supra. The case of Macon and Stephens v. Owen, 1841, 3 Ala. 116, is cited in the Annotation in support of the statement: "And that an unreasonable delay in the prosecution of the proceedings gives rise to an effective abandonment. * * *" That case involved an *ad quod damnum* proceeding by an individual to establish a mill.

As shown above, when the cause came on for trial in the circuit court the parties stipulated that the property in question was properly ordered condemned by the probate court and that the only issue for determination in the circuit court was the proper amount of compensation to be paid the landowner. But, when, during the course of the trial it was indicated by the trial court that the landowner's contention as to the method of ascertaining the amount of compensation would be followed, the condemnor then sought to recede from its position that the property had been properly condemned in the probate court and to have the condemnation proceeding dismissed or discontinued from its inception, although the property involved had long since been put to the use of the public.

In overruling the motion to dismiss or discontinue the entire condemnation proceeding, the circuit court referred to the case of Baldwin v. Roman, 132 Ala. 323, 31 So. 596, and then stated that its action was based in part on "the fact that the County has appropriated and taken physical possession of and made a highway by and through the State Highway Department * * * that is to say that because of the fact the State Highway Department has already built the road which completely covers the land area of the Adwell property, the court is of the opinion that to permit a dismissal of this action at this stage would be an aversion by the County of the judicial processes or powers." In Baldwin v. Roman, supra, it was observed that there is no absolute right on the part of the plaintiff to dismiss his suit or take a voluntary non-suit when the rights of the defendant have been so affected or deter-

mined "as that the dismissal would prejudice them."

Prior to the effective date of the Constitution of 1901, the condemnor could not enter at all pending appeal from the probate court to the circuit court. Southern Railway Co. v. Birmingham, Selma & New Orleans Railway Co., 130 Ala. 660, 31 So. 509. This situation was remedied by provisions new to the Constitution of 1901 and included therein as a part of § 235, which provisions it has been said were made for the benefit of the condemnor in order to prevent undue delays attending condemnation proceedings. But such right of entry pending appeal to the circuit court is conditioned on the prepayment of the award made in the probate court and upon the filing of the prescribed bond. § 235, Constitution of 1901; § 18, Title 19, Code of 1940. See Opinion of Justices, 259 Ala. 524, 67 So.2d 417. Certain it is that such provisions were not intended to permit the condemnor to appropriate to his own use the property involved pending an appeal to the circuit court and then while that appeal is pending dismiss the entire proceedings, thereby forcing the landowner to resort to some other proceeding for his compensation. The dismissal or discontinuance would no doubt entitle the condemnor to a return of the money paid into court for compensation and damages assessed in the probate court. As to whether such an order would invalidate the bond which was filed need not be decided, for a suit on the bond should not be required of a landowner where land has been entered, occupied and appropriated for a public use under the circumstances here prevailing.

The landowner's right to have just compensation as a condition precedent to the taking, injury or destruction of his property for public use is expressly stated in § 235, supra, and reiterated in other parts of the Constitution. Mobile County v. Barnes-Creary Supply Co., 225 Ala. 127, 142 So. 72. In § 23 of the Constitution of 1901 it is stated: " * * * but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; * * *." As the amount is of the essence of just compensation, the mode of ascertaining what shall be deemed just is so far as it is controlled by the constitution, an essential part of the guaranteed right of payment. Southern Railway Co. v. Birmingham, Selma & New Orleans Railway Co., supra. Section 235, supra, assures to the landowner the right of appeal from what is termed the "preliminary assessment of damages" and further assures to him, if he so desires, that "the amount of damages in all cases of appeals shall * * * be determined by a jury according to law."

█ The required bond cannot be substituted for prepayment. A necessity to sue for compensation cannot be imposed on the landowner in this manner as it would be to defeat the plainly given right of prepayment as to the so-called "preliminary assessment", which was paid into the probate court, and it would require him to wait on future litigation to obtain the equivalent of property wrested from him. Southern Railway Co. v. Birmingham, Selma & New Orleans Railway Co., supra.

█ Under the provisions of § 17, Title 19, Code of 1940, appeals to the circuit court in cases of this character are triable de novo. We have said that in all such appeals the circuit court makes its own order of condemnation in accordance with the provisions of § 21, Title 19, supra, and we have used rather broad language in several of our cases concerning the fact that the trial in the circuit court is de novo. But, irrespective of any such broad statements, the fact remains that the appeal to the circuit court does not completely vitiate the proceedings and order in the probate court for § 235 of the Constitution and § 18, Title 19, supra, operate to permit the condemnor to have the right of entry pending appeal and certainly to that extent the order of the probate court is not suspended pending appeal "provided the amount of damages assessed shall have been paid into court in money, and a bond shall have been given in not less than double the amount of the damages assessed, * * *." § 235, Constitution 1901.

We have said that a personal judgment cannot be rendered in a case of this kind but the money deposited in court by the condemnor in payment of the so-called "preliminary assessment" would undoubtedly be due the landowner where, as here,

there has been an appropriation of the suit property pending the appeal, if the cause is permitted to proceed in the circuit court to a judgment of condemnation and the award there made is equal to the "preliminary assessment", but if the proceeding is dismissed in its entirety, such money would be due the condemnor.

At the time the condemnor sought to abandon the proceeding, the easement in the suit property had not been fully acquired, but as shown above, the condemnor had taken complete possession of the property and had so used it that it was unsuitable for private use. The landowner had, at that time, at least a vested right to be compensated, and to have the amount of compensation determined in the condemnation proceeding then pending. § 235 Constitution of 1901.

Under the facts and circumstances in this case, it must be held that the trial court did not err in refusing to permit the condemnor to abandon the proceedings. Department of Highways and Public Works v. Gamble, 18 Tenn.App. 95, 73 S.W.2d 175; Keys v. Shirley, 153 Va. 461, 150 S.E. 401; Taylor v. Pike County, 273 Ky. 659, 117 S.W.2d 933. See Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Owen v. United States, 5 Cir., 8 F.2d 992; United States v. Crary, D.C., 2 F. Supp. 870; Petroli v. Mayor and City Council of Baltimore, 166 Md. 431, 171 A. 45.

The amount of the award made by the trial court was rested on the holding that the landowner's compensation should be based on the value of the property as of December 4, 1952, the day on which the application for order of condemnation was filed in the probate court, which, as shown above, was before the building on the property was partially destroyed by fire. The county takes the position here, as it did in the trial court, that the value of Adwell's property should be determined as of the day on which the county paid the award into the probate court, which was long after the fire.

There is no constitutional or statutory provision of this State which spells out the time as of which the valuation is to be determined and no Alabama case has been cited which can be said to be directly and legally authoritative.

Perhaps the leading Alabama case on the general subject of the time as of which the valuation is to be determined in a condemnation case is Jones v. New Orleans & S. R. Co., 70 Ala. 227, decided in 1881. In 1870, the railroad, the appellee in that case, without resorting to condemnation proceedings, took and appropriated lands belonging to appellant Jones and placed thereon railroad facilities such as rails, ties, trestles and other structures. The owner, Jones, did not seek to enjoin such action or to sue in trespass or in ejectment. Approximately ten years later, the railroad having continued in possession, instituted a statutory proceeding for condemnation: "to ascertain the compensation to be paid the appellant, for lands of which she was the owner, which had been taken and appropriated in the construction of the road." The single question for decision according to the opinion prepared for the court by Chief Justice Brickell was: "Whether the appellant was entitled to the value of the lands as of the day when the proceeding was instituted (May 4, 1880,) enhanced by the value of the rails, ties, trestles, and other structures, placed thereon by the appellee." In answering that question in the negative, the court through the learned Chief Justice said in part, as follows:

"The compensation is assessed, or ascertained, as of the time when the land is taken. Until the taking, whatever may be the other rights of the proprietor, the right to just compensation is not complete. What shall constitute the taking, may vary in different jurisdictions, and may depend, when proceedings for condemnation are resorted to, before an actual appropriation of the land, upon the state of the proceedings. Where, as in this case, such proceedings are not resorted to, the entry upon the lands, disturbing the possession of the proprietor, followed by the location of the road, and operations for its construction, is the time of taking.

\*     \*     \*     \*     \*     \*

"The land-owner is entitled to the value of the lands at the time of the

taking and appropriation, whether the damages are assessed, as they should be, by condemnation proceedings, before the entry for the purposes of constructing the road, or subsequently, after there has been an actual taking and appropriation, without such proceedings, and without making payment of compensation."

The Jones case, supra, has been cited many times and its holding in regard to the question there for decision, apparently has not been abandoned by our later decisions. In Birmingham-Trussville Iron Company v. Allied Engineers, 225 Ala. 522, 144 So. 1, we applied the rule of the Jones case where, like the facts in that case, the land had been entered and occupied before condemnation proceedings were instituted. See United States v. Goodloe, 204 Ala. 484, 86 So. 546.

In Southern Railway Co. v. Cowan, 129 Ala. 577, 29 So. 985, 988, which was a bill in equity to have a deed conveying right of way declared null and void and for the assessment of damages for the use of the right of way, the Jones case, supra, was cited among other authorities in support of the following statement: "On the former appeal we held, consonant with our rulings on the subject previously and since, and the rule generally obtaining, that just compensation for the land, at the time of the taking, paid before, or concurrently with its appropriation, with interest thereon, is the right of the owner seeking compensation." The Jones case, supra, has been cited in other cases where there was an entry and appropriation of the lands without the institution of condemnation proceedings.

We have cited the Jones case, supra, in a case where apparently condemnation proceedings were instituted before any entry in support of the statement: "The measure of damages in cases of this character, as established in this court, sustained by many decisions elsewhere and textwriters, is, the value of the land when taken by the railroad company before any injury thereto resulting from the construction of the road, and the injury or diminution in the value thereby caused to the remaining and contiguous lands, with interest on the sum thus ascertained." Mobile & Ohio R. Co. v.

Hester, 122 Ala. 249, 25 So. 220, 221. To like effect see Mobile & Ohio R. Co. v. Postal Telegraph Cable Co., 120 Ala. 21, 24 So. 408; Pickens County v. Jordan, 239 Ala. 589, 196 So. 121. But in none of the cases where the condemnation proceeding was instituted prior to the actual occupancy of the land, do we find a definition of what constitutes the taking. That question was not up for decision in the Jones case, supra, where the entry was some ten years prior to the time the condemnation proceedings were instituted and it is not entirely clear from the opinion in that case, whether there was an intention to express an opinion as to the date for determination of value where there had been no occupation prior to the institution of the condemnation proceedings.

Under the present constitutional and statutory provisions which relate to the taking of private property for public use, the so-called preliminary assessment made in the probate court which becomes the final award where there is no appeal to the circuit court, must of necessity be finally determined by the commissioners prior to the actual occupancy of the land by the condemnor. In fact, the land may never be actually occupied, as the condemnor may not be satisfied with the amount of the award in which event he is neither required to pay the award nor to appeal to the circuit court. There should not be one time for ascertaining the valuation where there is no appeal from the order of condemnation entered in the probate court or where there is an appeal but the land is not occupied pending the appeal, and another time for the determination of value where there is an appeal, pending which the condemnor does go into possession.

In view of the fact that there appears to be no authoritative holding of this court on the question at hand, it is felt that the statement in Smith v. Jeffcoat, 196 Ala. 96, 71 So. 717, to the effect that compensation must be fixed by the valuation of the property as of the date of the filing of the petition or application for condemnation, although unnecessary to a decision in that case, states the correct rule to be applied in cases of this kind. This affords a definite and invariable rule, which has relation to the time at which the property is designated

as being desirable and needed for the public use, the owners ascertained who are entitled to be compensated, and the judicial proceedings instituted for the purpose of determining such compensation. Such a rule is not as liable to be affected by the duration of the proceeding, or by increase or diminution in value, whether occasioned by the actual taking itself, or by acts of the owners, lapse of time, or other circumstances. In all these respects, it is a juster measure of valuation than a valuation of the estate at any subsequent point of time. See Burt v. Merchants' Insurance Company, 115 Mass. 1; 10 Ohio State Law Journal, p. 79.

True, the landowner still has possession of the land, and no easement thereon has been established, but possession is not the only element of value in land. The right to sell, the right to rent, the right to improve, the right to sow and to reap, are all valuable rights which are affected by the mere filing of the application for order of condemnation.

■ Although the valuation should be determined as of the date of the filing of the application, compensation should not be awarded for property destroyed by fire subsequent to the date of the filing of the application for which the landowner has been compensated, by insurance or otherwise. In the instant case there was no insurance.

The award fixed in the circuit court is fully supported by the evidence and is in accord with the principles announced above and should not be here disturbed.

■ The trial court correctly awarded interest from March 24, 1953, the day on which the property was occupied by the State of Alabama, which was the day on which the land was appropriated by the condemnor and on which it became precluded from abandoning the proceeding. Southern Railway Co. v. Cowan, supra; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884; Haig v. Wateree Power Company, 119 S.C. 319, 112 S.E. 55.

■ The assignments of error to the effect that the trial court erred in rendering a money judgment against the appellant, Jefferson County, are without merit. The judgment is not a personal judgment.

■ The appellant, Jefferson County, cannot be heard in this court to complain because it was adjudged below that the entire award be paid to Adwell when the First National Bank of Birmingham had an unsatisfied first mortgage on the property. This situation here is entirely different from that presented in the case of Williams v. Jefferson County, 261 Ala. 76, 72 So.2d 920.

I would affirm the judgment of the trial court.

SPANN, J., concurs in the foregoing.

### On Rehearing

Justices STAKELY and GOODWYN concur in the dissenting opinion prepared by Justice LAWSON on original deliverance. Justice COLEMAN concurs in the result reached in that opinion.

It follows that rehearing is granted, judgment of reversal set aside, and judgment of the trial court affirmed.

Affirmed.

LAWSON, STAKELY, GOODWYN and COLEMAN, JJ., concur.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., dissent.

The following opinion was prepared by FOSTER, Supernumerary Justice, in response to application for rehearing and is adopted by LIVINGSTON, Chief Justice, and SIMPSON and MERRILL, Associate Justices, as their dissent.

As pointed out in the majority opinion, it is the value of the land when taken which fixes the amount of the "just compensation" on condemnation, together with the damage to the adjoining land. We referred to the case of Jones v. New Orleans and Selma R. Co., 70 Ala. 227. It is there said: "The land owner is entitled to the value of the land at the time of the taking and appropriation, whether the damages are assessed, as they should be, by condemnation proceedings, *before the entry for the purpose of constructing the road,* or subsequently after there has been an actual taking and appropriation, without any proceedings, and without making payment of compensation". In that case the condemnation proceeding had been resorted to after the

actual appropriation, and building of the railroad. What is said must be referred to that status and reference to the instant status must be considered in that light. But the Court made an exhaustive study of the question, both when the appropriation was actually taken before condemnation and when taken afterwards. What is said is not simply the assumption, without argument, of a highly controversial question as in Smith v. Jeffcoat, 196 Ala. 96, 71 So. 717. But in resolving the question directly involved, the Court felt called upon to and did analyze it from every angle. The Jones case is one of Justise Brickell's masterpieces. The effort was to formulate a rule which would award compensation which was "just", as the Constitution requires. The Court laid down a formula applicable to the situation there involved and has applied to it the one here involved in the language quoted above for the purpose of ascertaining what would be "just" to the land owner. The petitioner in the Jones case had entered upon the land as a trespasser and made valuable improvements. Doing so as a trespasser, those improvements were thought to belong to the land owner and on condemnation later conducted that petitioner should pay for them. But the Court said that petitioner, although a trespasser, was exercising the right of eminent domain and in doing so was required to do no more than pay what was "just". The value in all instances was fixed at the time of "taking and appropriating". That is generally stated to be the proper formula. Birmingham-Trussville Iron Co. v. Allied Engineers, 225 Ala. 522, (5), 144 So. 1; Southern Ry. Co. v. Cowan, 129 Ala. 577, 29 So. 985; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934; Messer v. United States, 5 Cir., 157 F.2d 793; 29 C.J.S. Eminent Domain § 185, pp. 1068–1069.

Under our law when proceedings are conducted before an actual appropriation, the amount of damages and just compensation is necessarily at a time before there is such an entry upon the land. This may occur as much as six months after the order of condemnation is made.—Section 25, Title 19, Code. But the value reported by the commissioners on which the order is made is as of that time, although the actual appropriation occurs later. The taking is theoretically accomplished as of the time of fixing those values by the commissioners, and that becomes the date of taking for that purpose because petitioner thereby acquires the right to do so on a value fixed on that day. The issue is to be tried before the commissioners and decided by them as of the date of their report. If an appeal is taken to the circuit court, it is triable *de novo*—section 17, Title 19, Code—but the issue is the same. 29 C.J.S. Eminent Domain § 185, p. 1073, notes 51–52. It is not changed by the fact that petitioner may have taken actual possession pending the appeal or that there has occurred either an increase or decrease in the value and physical condition of the property from that existing at the time of the trial before the commissioners.

In this case the land owner had rightful possession of the land at the time of the fire. Petitioner had nothing to do with its possession at that time and had no right to its possession and had no interest in the land, and had not taken it either actually or theoretically.

Appellee seeks to apply to the situation certain principles of law said to govern as between a vendor and purchaser before there is a deed to the purchaser. He declares that there is a principle that where there is a relationship of vendor and purchaser and there is fire insurance covering the property on a contract of insurance with the vendor "under the rule that the loss falls on the purchaser, he is entitled to credit for the insurance money received by the vendor". We cannot follow the claim that such principle is here applicable. Under those circumstances the vendor holds the title merely as security for the purchase money owing by the purchaser. The purchaser is the equitable owner of the property and owes a debt to the vendor, and has become bound to pay the stipulated sum.

The relation of condemnor and condemnee does not have the incidents of vendor and purchaser before a conveyance is made. The condemnor is not obligated to pay the amount of the assessment before he elects to do so.

It is stated that "eminent domain is in the nature of a forced sale to the state". 29 C.J.S. Eminent Domain § 17, p. 800, note 42; Beeland Wholesale Co. v. Kaufman, 234 Ala. 249(2), 174 So. 516; Jackson v. State of New York, 213 N.Y. 34, 106 N.E. 758, L.R.A.1915D, 492.

Although it is safe to assert that a completed condemnation by payment of the fixed award is in effect a forced sale, all the steps leading up to it do not parallel those conducted by negotiation. We find no authority which asserts that they do parallel.

Appellee elsewhere in brief seeks to apply the principle of an option which more nearly resembles the instant situation. But it does not become an option until the condemnor has the right to accept something offered to him. In a condemnation there is nothing offered to him until the commissioners make their report and the court orders the condemnation on the condition prescribed by statute: that is, upon payment in six months of the amount of the award. So here, when the option was submitted to the county the fire had occurred and the submission was to buy the property in its then condition.

The question here involved is controlled by the statute of the respective states. It is indicated in Jackson v. State of New York, supra, cited by appellee, that the first step was an "appropriation" of the property by the state for some public purpose or the use of a public enterprise. Thereupon the board of claims should find the value of the land including the buildings. It did so and found the value of fixtures in the buildings, machinery, etc. The state claimed the right to reject the fixtures and refused to pay for them. The Court of Appeals observed that this was an enforced sale and the state stands toward the owner as buyer toward seller. The court did not sustain the claim of the state and held that the rights of the parties became fixed at the time of appropriation. The title to the land passed upon notice of appropriation and this included the fixtures which also passed and must therefore be paid for.

Applying that theory here, it would be that the condemnor must pay for the land in its condition when the title passes. The New York statute seems to differ from ours to the extent that it is without much value to us in this case.

In application of Westchester County, 204 Misc. 1031, 127 N.Y.S.2d 24, 33, the court made it clear that under a different statute the condemnor must pay the value of the land at the time of taking it which was (theoretically) when the title passed. The condemnation was begun February 7, 1950, notice was given February 8, 1950, and title passed under the condemnation July 12, 1951. The important question was whether February 7, 1950, or July 12, 1951 was the date for measuring the value. The court observed:

"The court has further concluded that such difference in value and such damages, if any, are to be determined *as of the time of vesting of title to the subject parcel in the County, to wit, as of July 12, 1951.* The institution of the proceedings and the filing of the lis pendens in February, 1950, *merely put the respondents on notice that the County was about to take a portion of their premises.* The respondents presumably then knew that the law would require the payment by the County of the value of the subject parcel and consequential damages *as of the time title passed.* If the County unduly delayed the taking of title, the respondents had the right to compel it to proceed or have the proceedings dismissed and the lis pendens cancelled. There is generally some lapse of time between the institution of a condemnation proceeding and the taking of title by the condemnor, but there is no basis for an award for delay in appropriation. Such is the general rule in this state and the parties to condemnation proceedings are bound thereby, and must act accordingly.

"It is the well recognized general rule in the law of eminent domain that, in the absence of special statutory provisions otherwise declaring, the date of the appropriation or expropriation is the value or damage date. In other words, *the date on which title passes or injury is done* is the date when the

money must or should be paid and the amount thereof determined. See 29 C.J.S. Eminent Domain § 185, page 1068; Parks v. City of Boston, 15 Pick., Mass., 198; Matter of Mayor, etc., of City of New York, 40 App.Div. 281, 284, 58 N.Y.S. 58, 60; In re Simmons [Ashokan Reservoir, Sec. No. 7], 130 App.Div. 356, 359, 114 N.Y.S. 575, 577–578, affirmed 195 N.Y. 573, 88 N.E. 1132, affirmed sub nom McGovern v. City of New York, 229 U.S. 363, 33 S. Ct. 876, 57 L.Ed. 1228; In re Board of Water Supply of City of New York, 277 N.Y. 452, 457, 14 N.E.2d 789, 791; In re City of New York, West Tenth St. Borough of Brooklyn, 267 N.Y. 212, 220, 196 N.E. 30, 32, 98 A.L.R. 634; In re City of New York (East River Drive), 264 App.Div. 555, 560, 35 N.Y.S.2d 990, 996, affirmed 298 N.Y. 843, 84 N.E.2d 148.

"For instance, it was said by Chief Justice Shaw in an early Massachusetts case (Parks v. City of Boston, 15 Pick. at page 208, supra):

" 'The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law to conduct the inquiry; and this delay must be compensated by interest. But in other respects the damages must be appraised upon the same rule as they would have been on the day of the taking.'

"The constitutional requirement of just compensation is said to be met by the payment of the fair market value of the property taken as of the date of the taking. * * * It is said to be a well established principle that a person whose property is taken by virtue of the power of eminent domain 'is entitled to be paid only the value of the property, considering it in its condition and situation at the time it is taken.' * * *

"The decisions having to do with a proceeding under the Condemnation Law of this state, or under a special statute containing provisions for the vesting of title upon payment, may be said to recognize and to be in accordance with general rules above mentioned. *In such a proceeding, the last date upon which any intelligent appraisal of what will be taken can be made is the date of the report or award by the commissioners. This is always some time before the title date but it is the nearest to the title date that the commissioners can approach without stultification, and accordingly, is held to be the value date on which awards under the laws indicated must be made.* * * *

"*A recognized exception to the general rule exists where the condemnor, under legal authorization, enters into possession of the realty before he takes title. Under such circumstances, the value date is moved back to the date of compliance with the legal conditions of possession before title.* * * * The same kind of reasoning has been applied to cases where a trespass amounting to an exclusive appropriation has been committed innocently by a legal entity with a power of condemnation. * * * In the case at bar, however, the County did not enter upon or take possession of the subject parcel prior to acquiring title, and, in fact, was not entitled to possession until the entry of the judgment of condemnation.

"*A review of the decisions leads to the conclusion that the rule generally to be applied in condemnation proceedings in this state is that the title vesting date or possession date, whichever is the earlier, shall be regarded as the value fixing date.* Special provisions by statute may, of course, render such rule inapplicable in a particular case. The special statute applying to the proceeding at bar, Westchester County Administrative Code,

does not, however, contain any provision inconsistent with the application of the general rule." (Italics supplied.)

Appellee cites the case of Heidisch v. Globe and Republic Ins. Co., 368 Pa. 602, 84 A.2d 566, 29 A.L.R.2d 884, as holding contrary to the majority opinion. That was a suit by the land owner against an insurer of property against fire. The question posed at the outset in the opinion is: "Does the owner of property which has been condemned by eminent domain but title to which has not as yet passed to the County have an insurable interest in the property entitling him to compensation under a contract of insurance upon the loss of the building by fire?" The following were the facts: Viewers were appointed and on August 19, 1949 an award was made by the viewers. An appeal was taken. A consent verdict was rendered January 11, 1950, which was paid in full ten days later. In the meantime, on August 28, 1949, Globe and Republic Insurance Company (defendant) issued its policy of insurance to plaintiffs in the sum of $6,000. Thereafter on September 28, 1949 the building was totally destroyed by fire. The opinion stated that under the statute (named) title to the property remained in plaintiffs until the county paid the amount of the consent verdict on January 21, 1950. The company claimed that plaintiffs' title is merely to secure payment of the award, and they had suffered no economic loss and therefore cannot recover on the insurance. It will be observed that the viewers made their report on August 19, 1949. An appeal was taken, and pending that appeal the fire occurred. The county had not at that time paid the amount of the viewers' award and had not taken possession. After the fire loss, a consent verdict was rendered. It was said that the situation was analogous to where the insured enters into an agreement to sell the premises and after signing the agreement, but prior to passage of title, a fire occurs. It was noted that the insured holds title as security for the purchase price, and the vendor possesses an insurable interest (such is our law—see Robinson v. Wade, 220 Ala. 693, 127 So. 170); also that the vendor is the trustee for the purchaser of the insurance fund. But the insurer is liable to pay for the loss to the seller. By the time of the trial of the suit in that case the county had paid the full amount of the award which included the value of the house which had burned. The analogy is not exact, because the condemnor is not obligated as a purchaser.

The difference between Heidisch v. Globe and Republic Ins. Co., supra, and the instant case is in the facts, not the principle of law. There the fire occurred after the viewers made their award and pending the appeal. No possession had been taken pending the appeal. The court did not see fit to discuss a situation where, as in our case, the fire occurred before the viewers made their report because it was not involved. Our view is consistent with the holding that after the viewers (or commissioners) make their award, the subsequent proceedings as to value must be based on the condition of the property at the time of the award by them. The probate court must accept that as the proper amount and order the condemnation accordingly. Section 16, Title 19, Code. If the owner had insurance the proceeds of it from a fire occurring afterwards would be held in trust for the condemnor if he saw fit to pay the award. But we think that if the fire occurred before the commissioners viewed the property and made their award, the proceeds of the insurance held by the owner, if any, would be for his own benefit. We know of no authority, except Smith v. Jeffcoat, supra, which conflicts with that statement when no statute causes a different result.

It is our view that the application for rehearing should be overruled.